John TRUJILLO, et al., Plaintiffs,

v.

Margaret HECKLER, Secretary, Department of Health and Human Services, Defendant.

Civ. A. No. 82-K-1505.

United States District Court, D. Colorado.

Aug. 16, 1983.

See also 558 F.Supp. 1058.

Linda J. Olson and Michael J. Steiner, Legal Aid Soc. of Metropolitan Denver, Denver, Colo., for plaintiffs and some plaintiffs-intervenors.

Daniel M. Taubman, Colorado Coalition of Legal Service Programs, Denver, Colo., R. Eric Solem, Pikes Peak Legal Services, Colorado Springs, Colo., Carol Glowinsky, Legal Aid & Defender Program, Boulder, Colo., for all plaintiffs.

Bernard A. Poskus, Colorado Rural Legal Services, Grand Junction, Colo., for Rother.

William Redak, Jr., Longmont, Colo., for Gypin.

John G. Detmer, Denver, Colo., for Fontaine.

John R. Barksdale, Asst. U.S. Atty., Denver, Colo., for defendant.

## ORDER GRANTING SUMMARY JUDGMENT

KANE, District Judge.

This case comes before me on cross-motions for partial summary judgment. At issue is whether the secretary may terminate social security disability benefits (SSDI) and supplemental security income benefits (SSI) without first finding a material medical improvement [1] in the recipient's condition or without giving a presumptive effect to the earlier determination of disability. In an earlier ruling I certified this case as a class action and denied the secretary's motion to dismiss for lack of jurisdiction.

The named plaintiffs are residents of Colorado. All are or were receiving Title II (SSDI) benefits or Title XVI (SSI) benefits pursuant to 42 U.S.C. § 401 *et seq.* and 42 U.S.C. § 1381 *et seq.,* respectively. Some background on the Social Security Act is useful to the discussion which follows.

The social security disability program was enacted in 1956 as an insurance program to compensate individuals so disabled as to be unable to engage in any substantial work activity. As originally passed, the projected cost of the program was "modest." Congress felt it could be financed "over its entire future history by a tax rate of less than one-half of one percent." 128 Cong. Rec. S13120 (daily ed. Oct. 1, 1982) (remarks of Sen. Long). The cost of the program escalated rapidly, from 59 million dollars in

---

**1.** Plaintiffs define the improvement standard as "the determination that there has been a material medical improvement in a recipient's condition since the finding of disability or newly discovered evidence has established that the prior determination was clearly erroneous."

1956 to an estimated 18.5 billion in 1982. *Id.* Likewise, the number of disabled workers and beneficiaries rose from 149,850 in 1956 to an estimated 4,374,000 in 1982. *Id.*

Faced with an expensive and nearly unmanageable program, congress passed a series of amendments in 1980 designed to slow or halt the burgeoning number of beneficiaries. *Social Security Disability Amendments Act of 1980*, P.L. No. 96–265, 94 Stat. 441, codified in part at 42 U.S.C. § 421(h). The 1980 amendments authorized the secretary to review previously granted SSDI and SSI benefits to determine whether the recipients were still disabled. 42 U.S.C. § 421(h)(1). Under federal regulations interpreting the organic act as not requiring there to be medical improvement in the claimant's disability before termination,[2] the secretary began to review and terminate previously granted benefits in 1981.

The secretary was more successful at eliminating recipients than congress had anticipated. Instead of the 20 percent termination rate projected by the Social Security Administration, benefit terminations exceeded 40 percent.[3] 128 Cong.Rec. S7558 (daily ed. June 24, 1982). In 1979 and 1980 the Social Security Administration reviewed 160,000 cases for continuing eligibility. The number rose to 357,000 in 1981, and to an estimated 567,000 and 840,000 in 1982 and 1983, respectively. Congress and the review process came under fire as a result. Particularly irksome was the fact that approximately 65 percent of the cases appealed to administrative law judges were reversed. 128 Cong.Rec. S7450 (daily ed. June 24, 1982). Such reversals, however often took up to two years, leaving needy individuals and families in sometimes desperate straits. To alleviate some of the resultant hardship, congress passed additional legislation in early 1983, which continued the payment of benefits during the pendency of an appeal to an administrative law judge, Pub.L. No. 97–455, § 2, 96 Stat. 2498, Jan. 12, 1983, codified at 42 U.S.C. § 423(g).

As part of their argument, plaintiffs contend that a complete reading of the Social Security Act demonstrates that congress intended termination reviews to be conducted on the basis of a medical improvement standard. In support of this position they have cited in their briefs several amendments to the act which refer to the cessation of disability.[4] They interpret this language as requiring recovery from or improvement in a previously debilitating impairment. The plaintiffs also direct my attention to two Senate Finance Committee reports which specifically refer to a medical improvement. The first provides:

> Paragraph (4) of the new § 222(c) provides that a period of trial work ... shall end with the month in which his physical or mental impairment improves to a point where by reason of such improvement he is able to engage in substantial gainful activity ...[5]

The act, itself, is silent as to the appropriate standard of review in a termination proceeding. It defines "disability" as an

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months....

42 U.S.C. § 423(d)(1)(A).

Not only must an individual's physical or mental condition

---

**2.** *See* 20 C.F.R. §§ 404.1589, 404.1594, 416.989, 416.994 (1982). Continuing disability investigations are conducted under identical standards in both Title II and Title XVI cases.

**3.** For the period October 1981 to May 1982, the termination rate in Colorado was 37.8%. 128 Cong.Rec. S13865 (Dec. 3, 1982).

**4.** *See, e.g.,* 42 U.S.C. § 425(a): "If the Secretary ... believes an individual entitled to benefits ... *may have ceased* to be under a disability

ty, the Secretary may suspend ... benefits until it is determined whether or not such individual's disability *has ceased....*" (Emphasis added.)

**5.** S.Rep. No. 1856, 85th Cong.2d Sess., reprinted in 1960 U.S.Code, Cong. and Ad.News, 3608, 3703. *See also,* S.Rep. No. 404, 89th Cong. 1st Sess., reprinted in 1965 U.S.Code, Cong. and Ad.News, 1943, 2044.

be of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy....

42 U.S.C. § 423(d)(2)(A).

Section 425(a) permits the secretary to suspend disability benefits

on the basis of information obtained by or submitted to him, [if he believes] that an individual entitled to benefits under section 423 of this title ... may have ceased to be under a disability.... For purposes of this subsection, the term 'disability' has the meaning assigned to such title in section 423(d) of this term.

In light of this reference back to § 423(d), one might expect a disability to have ceased where a beneficiary has the ability to engage in any substantial gainful work by reason of any medically determinable physical or mental *improvement* no longer expected to result in death or last longer than 12 months. It appears that the Social Security Administration interpreted that act in just such a fashion before 1976 or 1977.

In announcing her new rules in 1980, the secretary said:

[W]e explain a new policy on when disability is considered to stop. *At one time we would not find that disability or blindness had stopped unless the medical evidence showed that the person's condition had improved since we last determined that he or she was disabled.* About three years ago, we changed this policy and began to find that disability or blindness had stopped if we found, on the basis of new evidence, that the person was not disabled or blind as defined by law. [Emphasis added.]

45 Fed.Reg. 55,568 (August 20, 1980).

The secretary argues that "the concept of cessation of disability is ... not the same as the concept of medical improvement." Although I do not necessarily agree with this exercise in casuistry, the secretary correctly points out that the legislative history of the 1983 amendment is rife with refer-ences to the lack of any medical improvement standard in the act. Senator Heinz pointed out that the amendment did not contain an improvement standard:

I want to point out that this bill has a serious omission: It fails to require that the Social Security Administration—before it may terminate benefits—show that an individual who was correctly awarded disability benefits has experienced significant medical improvement.

128 Cong.Rec. S13859 (daily ed. Dec. 3, 1982).

Senator Dole responded to Heinz's concerns with the following language:

I am certain that the medical improvement issue will be fully debated by the Finance Committee. While I cannot predict what action the Committee will take on this issue, I can assure the Senator I realize its importance....

\* \* \* \* \* \*

The issue ... is an important one, and I agree that we should hold hearings on this subject. We will address the issue early in next year's session.

\* \* \* \* \* \*

I shall certainly want to join you in looking at the issue next year—as part of a comprehensive review of the disability program.... We are not yet at the point where all the concerns about medical improvement have been resolved....

128 Cong.Rec. S13858, 13860 (daily ed. Dec. 3, 1982).

The secretary phrases the question aptly: "Why would Congress consider addressing the medical improvement issue if the Act already mandates application of a medical improvement standard[?]"

The point is well-taken. The confusion stems, in part, I believe, from congressional awareness that a substantial body of case law has sprung up around the appropriate standard of review in a termination proceeding. This was an issue which clearly troubled congress. One of the reasons for the high rate of reversals on appeal to administrative law judges was thought to

be that administrative law judges were using different standards than the initial examiners. As Senator Cohen put it:

> One reason for the discrepancy between the decisions made by the State agencies and the administrative law judges is that different standards are used. State claims examiners rely heavily on the program operating manuals—so-called POM's [sic]—which are internal Social Security Administration guidelines that are not published as regulations. The administrative law judges do not use the POM's but instead rely on the statutes, regulations, *and court decisions.* Our bill would require the same standards ... to be used by all decisionmakers. [Emphasis added].

128 Cong.Rec. S7449 (daily ed. June 24, 1982). *See also Id.* at S7451; 128 Cong.Rec. S13851–13858 (daily ed. Dec. 3, 1982).

Despite the extensive debate over the lack of medical standards and the lack of uniformity of decision, congress was unable to resolve the issues in the waning days of the session. It determined that such issues were better suited for long-term study and legislation than short-term emergency measures. As Senator Metzenbaum put it:

> I want to make it clear that this amendment, in terms of the standards now applied in disability reviews, does not change the status quo. *We are not, by this amendment, overturning current case-law.* We are merely stating that the language of this amendment itself does not address the question of whether or not there should be a showing of medical improvement. [Emphasis added].

128 Cong.Rec. S13861 (daily ed. Dec. 3, 1982).

Thus, the question was left to the courts to decide. In my opinion, the existence *vel non* of a medical improvement standard is a matter of case law in this and other circuits.

One of the earliest cases to address the present issue was *Miranda v. Secretary of Health, Education and Welfare,* 514 F.2d 996 (1st Cir.1975). At issue was whether the district court had applied the correct standards in reversing the secretary's termination of Title II benefits. The circuit court said:

> For his part, the Secretary must make an investigation that is not wholly inadequate under the circumstances. And once having found a disability, the Secretary may not terminate the benefits without substantial evidence to justify so doing. This will normally consist of current evidence showing that a claimant has improved to the point of being able to engage in substantial gainful activity; but it might also consist of evidence that the claimant's condition is not as serious as was first supposed.

514 F.2d at 998.

This formulation has been approved, sometimes tacitly, in the Third, Sixth, Eighth, Ninth, and Tenth Circuits.[6] *Torres v. Schweiker,* 682 F.2d 109, 112 (3rd Cir. 1982) ("The ALJ found that 'medical evidence of record subsequent to the cessation of benefits indicates that [Torres'] emotional disorder has markedly improved.' "); *Hayes v. Secretary of Health, Education and Welfare,* 656 F.2d 204, 206 (6th Cir. 1981) ("We find that the evidence does not support the conclusion that termination of Hayes' benefits was proper because her condition has improved."); *Weber v. Harris,* 640 F.2d 176, 178 (8th Cir.1981) ("The ALJ found that '[t]he medical evidence shows that beginning in February 1978, the claimant's impairments improved, and the claimant had the ability to engage in substantial gainful activity.' "); *Finnegan v. Schweiker,* 641 F.2d 1340, 1347 (9th Cir.1980) ("[b]enefits to a grandfather must not be terminated absent proof of a material improvement in his medical condition or of commission of a clear and specific error

6. Trial court decisions embracing this standard include: *Shaw v. Schweiker,* 536 F.Supp. 79 (E.D.Pa.1982); *Leyva v. Harris,* 514 F.Supp. 1313 (S.D.N.Y.1981); *Timblin v. Harris,* 498 F.Supp. 1107 (W.D.Pa.1980); *Magee v. Califa-* *no,* 494 F.Supp. 162 (W.D.N.Y.1980); *Spaulding v. Califano,* 427 F.Supp. 982 (W.D.Mo. 1977); *Siedlecki v. Schweiker,* 563 F.Supp. 43 (W.D.Wash.1983); *Musgrove v. Schweiker,* 552 F.Supp. 104 (E.D.Pa.1982).

during the prior state determination."); [7] *Van Natter v. Secretary of Health, Education and Welfare,* # 79–1439, (10th Cir. 1981) (Not for Routine Publication).

The Fifth Circuit has taken a slightly different approach, but with the same result. In *Rivas v. Weinberger,* 475 F.2d 255, 258 (5th Cir.1973), the court said, "[o]nce evidence has been presented which supports a finding that a given condition exists it is presumed to exist in the absence of proof to the contrary that the condition has remained unchanged." *And see Crosby v. Schweiker,* 650 F.2d 777 (5th Cir.1981) (per curiam).

The secretary suggests that the Tenth Circuit's opinion in *Van Natter* does not require application of a medical improvement standard. I disagree. The opinion unequivocally states:

> The record must show that *her condition has improved* whereby she is able to engage in substantial gainful activity, or it might also consist of evidence that the claimant's condition is not as serious as it was first supposed. (Emphasis added).

*Slip Opinion* at 6, 7.

Unless and until the Tenth Circuit reverses itself in *Van Natter,* the decision is binding. Accordingly, I hold that the secretary may not terminate Title II or Title XVI benefits in the absence of proof of a material medical improvement in the recipient's condition. Plaintiffs would also have me adopt the second prong of the *Finnegan* standard—that in the absence of improvement there must be clear and specific error in the prior proceeding. I do not, however, understand the *Miranda* decision or *Van Natter* in that fashion. *Van Natter* recognizes that there are some medical conditions which by their very nature are difficult to diagnose. As the court said in *Miranda:*

> It would be wrong for the Secretary to terminate an earlier finding of disability

on no basis other than his reappraisal of the earlier evidence. However, many impairments are difficult to diagnose; a proper diagnosis may require reference to the cumulative medical history.... At a termination hearing the Administrative Law Judge may appropriately contrast the relative strength or weakness of earlier medical evidence and relevant earlier events with claimant's current condition.

514 F.2d at 998, n.*.

The application of an improvement standard lends integrity and finality to the prior adjudicative process. *Musgrove v. Schweiker,* 552 F.Supp. 104 at 106 (E.D.Pa. 1982). To terminate benefits without showing a medical improvement is to terminate on a "whim, caprice or an impermissible relitigation of facts and determinations already decided." *Id.*

The plaintiffs also urge me to apply a presumption of disability to the earliest proceeding finding the recipient disabled. As one judge has noted,

> the application of a presumption of disability would prevent the Secretary from terminating disability benefits solely on changing administrative philosophies on who ought to get benefits, and instead secure the decision making process as being firmly grounded in law.

*Musgrove v. Schweiker,* 552 F.Supp. 104 at 106. (E.D.Pa.1982).

The presumption of disability approach, in my view, accomplishes the same thing as an improvement standard. More to the point, it typically incorporates an improvement standard. As the court in *Patti v. Schweiker* said:

> In an appropriate case, however, a prior ruling of disability can give rise to a presumption that the disability exists. 'Once evidence has been presented which supports a finding that a given condition

---

7. The *Finnegan* case was recently supplemented by *Patti v. Schweiker,* 669 F.2d 582 (9th Cir.1982). In *Patti,* the Ninth Circuit followed the Fifth Circuit's presumption of disability approach, holding that termination was improper, once disability has been established in an earlier proceeding, in the absence " 'of proof to the

contrary that the condition remains unchanged.' " Although the secretary appealed neither case, she suggests that they are limited to their facts. I do not agree that either case is so limited. *See Lyle v. Secretary of Health and Human Services,* 700 F.2d 566 (9th Cir.1983).

exists, it is presumed in the absence of proof to the contrary that *the condition remains unchanged.*'
669 F.2d 582, 586, 587 (9th Cir.1982), *quoting Rivas v. Weinberger,* 475 F.2d 255, 258 (5th Cir.1973). [Emphasis added]

Under either standard, benefits may not be terminated without showing that the recipient's medical condition has improved. Accordingly, I decline to adopt the presumption theory simply because I find it duplicative.

The secretary suggests that the adoption of this standard will "impede the fair, efficient working of an intricate and complex system and impose intolerable administrative burdens on an already overburdened system." She claims that under the act a determination of disability is not based solely on an individual's medical condition, but rather the determination is made in light of medical condition, age, education, and work experience. This is correct. 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(B). The class in this case, however, has been specifically defined to exclude claimants who are no longer eligible because of nondisability factors.[8] This narrowly drawn definition will limit the impact of my ruling to those class members whose benefits were terminated without finding a medical improvement in the recipient's condition.

IT IS ACCORDINGLY ORDERED that the defendant's motion for summary judgment is denied, and that the plaintiff's partial motion for summary judgment is granted.

---

**8.** The class I certified in my order of February 17, 1983 consists of:

All Social Security Disability Insurance (SSDI) and Supplemental Security Insurance Income (SSI) beneficiaries residing in the State of Colorado who have been or are receiving disability benefits and who have presented a claim to the secretary that their disabilities have continued and whose entitlements have been terminated or may be terminated without the application of an improvement standard to their case, or who have been terminated or may be terminated due to the failure of the Secretary of the Department of Health and Human Services to give presumptive effect to the prior determination of disability. The class excludes SSDI and SSI disabled beneficiaries whose benefits were terminated because they have returned to substantial gainful activity, who failed to cooperate, who admit they have medically recovered, or who are no longer eligible because of nondisability factors.