John DOE, Robert Seawright, Donald E. Dill, Charles W. Boyd, Dorothy J. Messenger, Gloria Washington, and Yvonne Dunlap, Individually and on behalf of all others similarly situated

v.

Margaret M. HECKLER, Secretary, United States Department of Health and Human Services.

Civ. A. No. M–83–2218.

United States District Court, D. Maryland.

Dec. 13, 1983.

Dennis W. Carroll and Ethel Zelenske, Administrative Law Center, Legal Aid Bureau, Inc., Baltimore, Md., for plaintiffs.

J. Frederick Motz, U.S. Atty., D. Maryland, Glenda G. Gordon, Asst. U.S. Atty., Baltimore, Md., Diane C. Moskal, Regional Atty., Michael P. Meehan and Thomas A. Dougherty, Jr., Asst. Regional Attys., Dept. of Health and Human Services, Philadelphia, Pa., Randolph W. Gaines, A. George Lowe and Gabriel L. Imperato, Dept. of Health and Human Services, Baltimore, Md., for defendant.

JAMES R. MILLER, Jr., District Judge.

## MEMORANDUM AND ORDER

### I. *Background*

On June 27, 1983, plaintiffs, John Doe and Richard Seawright, filed a putative class action challenging the actions of the Secretary of the United States Department of Health and Human Services (HSS) in terminating the plaintiffs' social security benefits under the Old Age, Survivors, and Disability Insurance Act, 42 U.S.C. §§ 401 *et seq.* (Paper No. 3).

On July 15, 1983, John Doe was reinstated to the disability benefit rolls. On September 16, 1983, the defendant filed a motion to remand Robert Seawright's case for a *de novo* hearing. (Paper No. 27). Finding that the Secretary had established good cause for the remand, this court, on September 30, 1983, granted that motion. (Paper No. 38).

In the meantime, Charles Boyd, Dorothy Messenger, Gloria Washington and Donald Dill sought leave to intervene in this case. (Paper No. 24). Because the applicant intervenors met the requirements of Fed.R. Civ.P. 24(a)(2), their motion was granted. (Paper No. 35).

At the hearing held on November 18, 1983, the plaintiffs sought leave to file a second complaint in intervention in order that at least one plaintiff would represent those members of the class who had not fully exhausted their administrative remedies. The defendant, on December 9, 1983, filed an objection to the motion for leave to intervene. (Paper No. 43). This court now grants the motion of Yvonne Dunlap to intervene as of right for the same reasons set forth in this court's previous order granting Washington, Boyd, Messenger, and Dill the right to intervene. (Paper No. 35). Since the claims of the original plaintiffs are now moot, those five intervenors must be considered, for class certification purposes, the named plaintiffs in this case. In fact, in their complaints in intervention, the applicant intervenors sought leave to intervene individually and on behalf of all other similarly situated. (Paper Nos. 36 & 42).

## II. *Requested Definition of the Class*

The plaintiffs originally moved for certification of a class composed of all persons in the State of Maryland:

"(a) Who have applied for disability benefits under the Social Security Act;

"(b) Who have been found by the Secretary to be under a disability as defined in the Social Security Act, 42 U.S.C. § 416(i) and determined to be eligible for monthly disability benefits under the Act;

"(c) Whose disability has been determined by the Secretary to have ceased in a decision issued on or after the 60th day prior to the filing of this action;

"(d) Whose disability has been determined to have ceased based on medical factors;

"(e) Who have had or will have their monthly benefit checks stopped; and

"(f) Who have had their disability benefits terminated without any finding that either (i) there has been a change in their medical condition since the time that the Secretary first determined that they were under a disability as defined in the Act or (ii) that the original favorable decision was erroneous."

(Paper No. 6).

On November 10, 1983, the plaintiffs sought leave to amend the definition of the proposed class to include a requirement that class members, after being notified that the Secretary was reviewing their continued disability and/or proposed to terminate their benefits, either:

(a) filed the questionnaire, SSA–454aF4, asserting that they were still disabled, or

(b) filed a request for reconsideration following the formal decision to terminate their benefits.

(Paper No. 40). The defendant, at the hearing, raised no objection to the motion. Such an amendment, slightly limiting the original breadth of the requested class, is proper in light of the fact that this court would have no jurisdiction in any event over any purported class member who had not "presented a claim" to the Secretary. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *McDaniels v. Heckler*, 571 F.Supp. 880 (D.Md.1983). Leave to amend is granted.

## III. *Procedural Status of the Named Plaintiffs*

The proposed class is represented by five plaintiffs. The parties have stipulated to

the facts surrounding the procedural history in four of the named plaintiffs' cases.

Donald Dill, a 57 year old man, was found to be disabled under the Social Security Act on June 28, 1978. He was advised by letter of June 30, 1982 that his disability had ceased as of June, 1982. He appealed that decision, and on April 28, 1983, the ALJ held that his disability continued. On its own motion, the Appeals Council reversed the ALJ's decision, and held in an opinion announced on August 5, 1983, that Dill's disability ceased in June, 1982. Thus, Mr. Dill has fully exhausted his administrative remedies.

The decision of the Appeals Council was not made on the basis that Mr. Dill's condition had improved. The Council concluded that Dill's original condition had not "worsened." (Ex. 2 at 5, Stipulations of Fact, Paper No. 41).

Dorothy Messenger is 41 years old. She was found to be disabled in March, 1969. By letter of April 9, 1982, Messenger was notified that her disability had ceased. She was denied benefits after her request for reconsideration was denied. In April, 1983, after a hearing in February, the ALJ determined that she was no longer entitled to disability benefits. On September 2, 1983, the Appeals Council affirmed the ALJ's decision. Messenger has exhausted all administrative remedies.

In reviewing the ALJ's decision to terminate Messenger's benefits, there appears to be no finding of medical improvement. The ALJ concluded that her medical condition "would not prevent her from performing her prior work activity...." (Ex. 3 at 6, Stipulations of Fact, Paper No. 41).

Gloria Washington, now 30 years old, began receiving benefits in November, 1979. On July 16, 1982, Washington was advised that her disability had ceased. She appealed that decision. The same ALJ who had granted her benefits in 1978, unfavorably reviewed her case and decided that her disability had ceased. The Appeals Council affirmed the ALJ's decision on July 19, 1983. Washington has exhausted her administrative remedies.

It appears to this court that the ALJ did not make a finding of medical improvement in Washington's case. In his findings he concluded that the medical evidence showed that the claimant continued to suffer from the original disability, but that she was no longer "disabled." (Ex. 6 at 8, Stipulations of Fact, Paper No. 41).

Charles Boyd began to receive disability benefits on April 7, 1981. He was notified in September, 1982 that his disability had ceased. The ALJ upheld that determination in a decision dated July 21, 1983. Boyd's appeal to the Appeals Council was unsuccessful. On November 1, 1983, the Council affirmed the ALJ's decision denying Boyd's claim for continuation of disability benefits. Boyd has exhausted his administrative remedies.

Again, it appears to this court that the ALJ did not find that Boyd's medical condition had improved. The ALJ considered evidence of headache, depression, and myocardial infarction—the same medical problems experienced by the claimant in 1981. The ALJ concluded that the same medical problems were no longer severe. (Ex. 8 at 7, Stipulations of Fact, Paper No. 41).

Yvonne Dunlap began receiving disability benefits in October, 1976 due to mental retardation, personality disorders and schizophrenia. She was notified on September 7, 1982 that her disability had ceased. A hearing was held on July 11, 1983, and the ALJ determined that Ms. Dunlap's disability had ceased. (Paper No. 42, Ex. 1). She has appealed the termination of her benefits to the Appeals Council, but no decision has yet been rendered in her case.

## IV. *Legal Analysis*

### a. *Class Certification*

■ Each member of a purported plaintiff class, in a suit under the Social Security Act, must meet the jurisdictional requirement of 42 U.S.C. § 405(g) of having received a final decision from the Secretary. *See Weinberger v. Salfi*, 422 U.S.

749, 763–64, 95 S.Ct. 2457, 2465–66, 45 L.Ed.2d 522 (1975). The Supreme Court has defined the two elements of finality. First, each member must have presented a claim for benefits to the Secretary. Second, each class member normally must have exhausted his administrative remedies. *Mathews v. Eldridge,* 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976).

In denying the defendant's motion to dismiss for lack of subject matter jurisdiction (Paper No. 22), this court, on September 9, 1983, determined that each member of the proposed class had presented a claim for continued benefits to the Secretary and that the exhaustion requirement was waivable and had been waived in this particular case. Therefore, all the named plaintiffs have met the jurisdictional requirements for bringing a class action.

The plaintiffs assert in their motion for class certification (Paper No. 6) that the proposed class meets the requirements of Fed.R.Civ.P. 23(a). The defendant argues that the plaintiffs do not meet three of the four requirements of Rule 23(a)—numerosity, commonality, and typicality. She apparently concedes that the plaintiffs and their counsel are adequate representatives of the proposed class. (Paper No. 28).

### (1) *Numerosity*

The plaintiffs state in their motion for class certification (Paper No. 6) that between March, 1981 and August, 1982 the Secretary terminated disability benefits in 134,000 cases nationally. They assert that thousands of these individuals reside in Maryland. In addition to those statistics, the parties have stipulated that in Maryland, from April—July, 1983, ALJ's in the Maryland area have upheld the termination of disability benefits in 55 cases.[1]

This suit was filed on June 27, 1983. The proposed class includes all persons whose disability has been determined by the Secretary, based on medical factors, to have ceased on or after the 60th day prior to the filing of this action. Because it is likely that the Secretary has continued to terminate benefits since June 27, the number of members in the proposed class presumably has grown during these months of litigation.

Although it is difficult to determine the exact size of the class, this court speculates that it exceeds fifty members. "Where 'the only relief sought for the class is injunctive and declaratory in nature...,' even 'speculative and conclusory representations' as to the size of the class suffice as to the requirement of many." *Doe v. Charleston Area Medical Center, Inc.,* 529 F.2d 638, 645 (4th Cir.1975) quoting *Doe v. Flowers,* 364 F.Supp. 953, 954 (N.D.W.Va. 1973), *aff'd mem.,* 416 U.S. 922, 94 S.Ct. 1921, 40 L.Ed.2d 279 (1974); *Fitzgerald v. Schweiker,* 538 F.Supp. 992, 1000 (D.Md. 1982). Therefore, this court finds the class to be sufficiently numerous to make joinder difficult or impracticable.

### (2) *Commonality*

Despite the defendant's argument to the contrary, the claims of the members of the proposed class share common questions of law and fact as required by Rule 23(a). Each class member's claim is based on the same facts: his/her disability benefits were terminated without a finding of medical improvement by the Secretary; he/she presented a claim to the Secretary to reinstate benefits; and he/she has either exhausted administrative remedies or the exhaustion of those remedies has been waived. No other facts are relevant in relation to the class members in this case.

Similarly, legal questions also are common to the class. At issue for all class members is whether the defendant's failure to apply a medical improvement standard violates the Social Security Act and/or the Due Process Clause of the Fifth Amendment.

---

1. It is not possible to determine if medical factors were considered by the ALJ's in upholding the terminations. Therefore, it is likely that not all of the 55 persons terminated would satisfy the requirements set out for membership in the class.

### (3) *Typicality*

The typicality requirement tests whether the named class representatives' interests are consistent with those of the class members. *See, e.g., Smith v. B & O Railroad Co.,* 473 F.Supp. 572, 581 (D.Md.1979). In the instant case, the claims of the representative plaintiffs are typical of the claims of the proposed class members. The representatives seek to enjoin the defendant from continuing policies and practices which allegedly violate constitutional and statutory mandates. No plaintiff claims an interest that can be interpreted as adverse to any class member. If the named plaintiffs are successful, all members of the class will benefit from the suit.

### (4) *Rule 23(b)(2)*

The plaintiffs have adequately demonstrated that this cause of action is one which fits within the definition set forth in Fed.R.Civ.P. 23(b)(2). Under that Rule an action may be maintained as a class action if

> "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

Fed.R.Civ.P. 23(b)(2).

The defendant has established a policy of refusing to apply the medical improvement standard when terminating disability benefits. That policy has been made generally applicable to the class members herein. In addition, the defendant has refused to be bound by a medical improvement standard despite the fact that the use of such a standard has been ordered by other federal courts in individual cases. *See, e.g., Simpson v. Schweiker,* 691 F.2d 966 (11th Cir. 1982); *Patti v. Schweiker,* 669 F.2d 582 (9th Cir.1982); *Musgrove v. Schweiker,* 552 F.Supp. 104 (E.D.Pa.1982).

Certification of the proposed class will be granted since the requirements of Rule 23 have been fully met.

### b. *Medical Improvement Standard*

At issue here is whether the Secretary, after reevaluating an individual's medical condition, can terminate disability benefits without a showing that the recipient's medical condition has improved.[2] The plaintiffs contend that the Secretary's actions in terminating benefits without finding medical improvement contravene the Social Security Act and the Constitution.[3] They seek a permanent injunction, enjoining the Secretary from terminating disability benefits to members of the class without first determining that the class member's medical condition has improved. They also seek a declaratory judgment that the defendant's policies and practices violate the Fifth Amendment to the United States Constitution and the Social Security Act. Finally, they request that the court order the defendant to restore to plaintiffs their full disability benefits until such time as the defendant determines that their medical condition has improved, and that the defendant be required to pay members of the class all monies unlawfully withheld.

The defendant responds that under the Social Security Act the Secretary has full power and authority to establish, by regulation, a broad and flexible standard by which to determine when a person's disability ceases, a determination which, when made, gives the Secretary the power legally to terminate that recipient's benefits. (Paper No. 26).

The plaintiffs do not contest the Secretary's power to make rules and regulations, but they contend that the Secretary has exceeded her statutory authority in promul-

---

**2.** The plaintiffs do not argue that a medical improvement standard must be applied in all termination cases. They recognize that there are a variety of other reasons why benefits may be terminated. *See* Paper No. 7 at 2 & 22, Paper No. 31 at 3.

**3.** The plaintiffs also argue that the Secretary's position is contrary to the principles of *res judicata* and administrative finality. The *res judicata* and administrative finality issues need not be addressed, given this court's decision today.

gating the regulation found at 20 C.F.R. § 404.1594 and that said regulation is arbitrary and capricious. Review by this court is appropriate under those circumstances. *Heckler v. Campbell*, —— U.S. ——, ——, 103 S.Ct. 1952, 1956, 76 L.Ed.2d 66 (1983); *Schweiker v. Gray Panthers*, 453 U.S. 34, 44, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981).

Although plaintiffs and defendant have cited an impressive array of recent decisions on the issue in almost every circuit, the starting point for this court's inquiry must be the Fourth Circuit's recent decision in *Dotson v. Schweiker*, 719 F.2d 80 (4th Cir.1983).

In *Dotson*, the plaintiff appealed from an order of the district court, affirming the Secretary's termination of his social security disability insurance benefits. He had applied for and was awarded disability insurance benefits in 1974. In May, 1981, the Secretary determined that his disability had ceased. His benefits were terminated on July 31, 1981. At the administrative hearing, the ALJ upheld the Secretary's determination that Dotson's disability had ceased. *Dotson v. Schweiker*, 719 F.2d at 81.

Before the Court of Appeals, Dotson argued that he was entitled to a presumption that, as a result of the Secretary's prior ruling of disability, he continued to be disabled. The court agreed that the ALJ had incorrectly allocated the burdens, and, therefore, remanded the case with instructions that the Secretary come forward at the hearing to rebut the presumption of disability. *Dotson v. Schweiker*, 719 F.2d at 82–83.

The Secretary suggests here that the holding in *Dotson* is a narrow one and is not controlling in this case. The plaintiffs read the case as adopting the medical improvement standard. Although the *Dotson* court did not specifically articulate that a medical improvement standard is applicable in disability termination hearings, the holding in *Dotson* supports the plaintiffs' case and provides guidance to this court in deciding the issue before it.

At least one court has noted that whether a court adopted the medical improvement standard or relied on a presumption of disability the results would be the same. *Trujillo v. Heckler*, 569 F.Supp. 631, 635 (D.Colo.1983). In *Trujillo*, the court held that the Secretary could not terminate Social Security "Title II or Title XVI benefits in the absence of proof of a material medical improvement in the recipient's condition." *Id.* at 635. Although the plaintiffs urged the court to apply a "presumption of disability to the earliest proceeding finding the recipient disabled," the court noted that

"[t]he presumption of disability approach ... accomplishes the same thing as an improvement standard. More to the point, it typically incorporates an improvement standard. As the court in *Patti v. Schweiker* said:

In an appropriate case, however, a prior ruling of disability can give rise to a presumption that the disability exists. 'Once evidence has been presented which supports a finding that a given condition exists, it is presumed in the absence of proof to the contrary that *the condition remains unchanged.*' 669 F.2d 582, 586, 587 (9th Cir.1982) ... (Emphasis added)."

*Trujillo v. Heckler*, 569 F.Supp. at 635–36. Therefore, the *Trujillo* court declined to adopt the presumption theory simply because it was duplicative of the medical improvement standard.

The Fourth Circuit quoted the above-cited paragraph from *Patti v. Schweiker* as support for its decision in *Dotson*. *Dotson v. Schweiker*, 719 F.2d at 82.

The reasoning in *Trujillo* that the application of a medical improvement standard and the use of presumption of disability lead to the same result is sound. Under either approach, the recipient bears the initial burden of demonstrating that he is disabled. As noted in *Dotson*, a social security benefit claimant always "bears a continuing burden of showing ... that he has a physical or mental impairment." *Dotson v. Schweiker*, 719 F.2d at 82, citing *Mathews v. Eldridge*, 424 U.S. 319, 336, 96

S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). Once he has established at an earlier hearing that a disability in fact exists, the use of a presumption of disability at a termination hearing merely "requires the Secretary to come forward with evidence that the [recipient] is not disabled." *Dotson v. Schweiker*, 719 F.2d at 83. Logically, if the recipient is presumed disabled because of prior medical findings, diagnosis, and testimony, the Secretary must rebut that presumption with medical evidence that the disabling condition has changed to such an extent that the recipient is able to engage in substantial gainful activity. That evidence cannot consist solely of the same medical evidence presented at the prior hearing. "To conclude otherwise would permit the Secretary to submit the same medical evidence to different physicians time and time again until the Secretary obtains a favorable result." *Dotson v. Schweiker*, 719 F.2d at 82.

Similarly, if a medical improvement standard is applied at termination hearings, the recipient by law must present evidence of continuing disability. *Mathews v. Eldridge*, 424 U.S. at 343, 96 S.Ct. at 907. At the termination hearing, such evidence will not be presented on a clean slate. It is most likely that the recipient will present the medical evidence found relevant to disability at his initial hearing and any current medical evidence he possesses to support his claim. After the recipient presents his medical evidence, the Secretary must show, by medical evidence, that the condition has improved to the extent that the recipient is able to engage in substantial gainful activity.

Courts applying the medical improvement standard make clear that the Secretary cannot use the termination hearing to relitigate facts and determinations already decided. "If ... the evidence in a continuation case is substantially the same as the evidence had been in the initial disability benefits request case, benefits must be continued." *Simpson v. Schweiker*, 691 F.2d 966, 969 (11th Cir.1982). *See also Musgrove v. Schweiker*, 552 F.Supp. 104, 106 (E.D.Pa.1982). Thus, the medical improvement standard, in effect, establishes a presumption of disability which the Secretary must rebut.

■ Finding no distinct difference between the medical improvement standard and the presumption theory, this court concludes that *Dotson* implicitly controls the issue before this court today. Although the *Dotson* court did not specifically hold that the Secretary's failure to use a medical improvement standard violated the Social Security Act or the Constitution, that appears to be the logical result of *Dotson*. Thus, in relation to the claims presented and the relief requested in the instant case, *Dotson* must be the initial starting point and the controlling precedent.

### (1) *Application of Dotson to Class Members' Claims*

The class members first argue that the Secretary's refusal to apply a medical improvement standard in their cases violates the Social Security Act.

Clearly the Social Security Act allows the Secretary to terminate benefits when an individual's disability "ceases."[4] 42 U.S.C. §§ 416(i)(2)(D) and 423(a)(1). The Act requires the Secretary to adopt "reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing same in order to establish the right to benefits hereunder." 42 U.S.C. § 405(a). The Secretary, in 1980, promulgated regulations regarding the termination of benefits. The regulations state in part:

---

4. The Act also allows the Secretary to terminate benefits if the individual returns to work, 42 U.S.C. § 423(d)(4); fails to supply medical evidence when requested, 42 U.S.C. § 423(d)(5), or refuses without good cause to attend vocational rehabilitation, 42 U.S.C. § 422(b)(1). Thus in these, and in other types of situations, the Secretary may terminate benefits without ever reaching the medical improvement issue.

The plaintiffs recognize that the decision in this case is limited to the medical improvement issue.

*"Why and when we will find that your disability has ended.*

(a) *General.* When the *medical or other evidence* in your file shows that your *disability has ended,* we will contact you and tell you that *the evidence in your file shows that you are able to do substantial gainful activity* and that your eligibility for cash benefits and for a period of disability will end. Before we stop your benefits or a period of disability, we will give you a chance to give us your reasons why we should not stop your benefits or your period of disability. Section 404.1595 describes your rights and the procedures we will follow. We may also stop payment of your benefits if you have not cooperated with us in getting information about your disability or if we cannot find you (see paragraph (c) of this section).

(b) *Disabled workers and persons disabled since childhood.* If you are entitled to disability cash benefits as a disabled worker or to child's insurance benefits, we will find that your disability ended in the earliest of the following months—

(1) The *month in which your impairment, as shown by current medical or other evidence,* is such that you are able to do *substantial gainful activity;*

(2) The month in which you demonstrated your ability to engage in substantial gainful activity (following completion of a trial work period); or

(3) The month in which you actually do substantial gainful activity (where you are not entitled to a trial work period)...."

20 C.F.R. 404.1594 (1983) (emphasis added). In promulgating the regulations the Secretary explained the policy underlying them:

"At one time we would not find that disability or blindness stopped unless the medical evidence showed that the person's condition had improved since we last determined that he or she was disabled. About three years ago we changed this policy and began to find that disability or blindness had stopped if we found, on the basis of new evidence, that the person was not disabled or blind as defined in the law."

45 Fed.Reg. 5556 (Aug. 20, 1980).

In addition, the Secretary issued a Social Security Ruling in January, 1981 which stated that under current policy in cessation hearings "[i]t will not be necessary to determine whether or how much the individual's condition has medically improved since the prior favorable determination." Social Security Ruling No. SSR–81–6 (Ex. C, Paper No. 3). Thus, as long as the ALJ or Appeals Council finds that a recipient is not "currently disabled," benefits will cease. *Id., see also* SSR 82–10C and 82–49C (Ex. R & T, Paper No. 7).

■ The Secretary argues that the regulations and the policy underlying them are consistent with the Social Security Act's mandate that disability benefits be paid until the "disability ceases." When medical factors, however, are the basis for terminating benefits, this court agrees with the plaintiffs that the regulations, promulgated pursuant to the Social Security Act, must be interpreted to require a finding of medical improvement prior to termination. In reaching this conclusion, this court gives effect to the reasoning and holding in *Dotson.* The Fourth Circuit has specifically stated that "the Secretary is required to rebut the presumption [of disability]. To conclude otherwise would permit the Secretary to submit the same medical evidence to different physicians time and time again until the Secretary obtains a favorable result." *Dotson v. Schweiker,* 719 F.2d 80 at 82. Therefore, the Secretary's failure or refusal to utilize the medical improvement standard in termination hearings, in which evidence consists solely of the physical or mental condition of the claimant, violates this circuit's interpretation of the regulations adopted under the Social Security Act. Although the Social Security Act itself does not mandate a medical improve-

ment standard,[5] that standard must be read into the regulations in light of the *Dotson* opinion. As one court stated, "if the Secretary's action and official policy contravenes the [legal standard established in this circuit] ... this court is not even called upon to interpret the statute, because the ... circuit has already spoken on the subject." *Siedlecki v. Schweiker*, 563 F.Supp. 43, 45 (W.D.Wash.1983) (referring to the 9th Circuit's decision in *Finnegan v. Matthews*, 641 F.2d 1340 (9th Cir.1981) mandating a medical improvement standard). Therefore, this court finds that in this circuit the Secretary must comply with the *Dotson* ruling and come forward at all termination hearings in which medical factors are considered with evidence to rebut the presumption of disability. In essence, the Secretary must establish that the claimant's medical condition has improved.

■ Thus, the Secretary will be enjoined from terminating disability benefits to members of the class in contravention of the medical improvement and other standards set out in or encompassed by the decision in *Dotson v. Schweiker*, 719 F.2d 80 (4th Cir.1983).

#### (2) *Application of Dotson to Individual Plaintiff's Claims*

In their complaint in intervention, plaintiffs Washington and Dill assert that, because a medical improvement standard was not applied at hearings and/or on appeal to the Appeals Council, decisions rendered in their cases were not supported by substantial evidence. (Paper No. 36, ¶ 91 & 92). They seek reversal of the Secretary's decision denying them disability benefits or, in the alternative, remand of their cases to the Secretary.

At the time the complaint in intervention was filed, plaintiffs Messenger and Boyd were awaiting a final decision by the Secretary on their appeals. Those decisions were rendered prior to the hearing held on November 18, 1983. This court has noted previously that not only in the cases of Dill and Washington, but in Messenger's and Boyd's cases also, neither the ALJ nor the Appeals Council found that the claimant had medically improved. Having concluded that such a finding is necessary before a claimant may be found no longer disabled, this court will remand the cases of each of those plaintiffs to the Secretary for reconsideration in light of this decision.

■ As to Yvonne Dunlap, whose appeal has not yet been considered by the Appeals Council, this court's holding in this case should govern the Appeals Council ruling. If it is determined that the ALJ had not found medical improvement in Ms. Dunlap's condition, then the Appeals Council should rule accordingly.

### V. *Restoration of Benefits*

■ The plaintiffs have requested additional relief in the form of restoration of benefits and repayment of money which was unlawfully withheld from the class members. Such relief will not be granted in light of Justice Rehnquist's decision in *Heckler v. Lopez*, —— U.S. ——, 104 S.Ct. 10, 77 L.Ed.2d 1431 (1983). In that case, the Secretary sought and was granted a stay of the district court's order in *Lopez v. Heckler*, 572 F.Supp. 26 (C.D.Cal.1983). That court had ordered the Secretary to notify each class member that he could apply for reinstatement of benefits, and be reinstated, if he believed that his medical condition had not improved since his disability determination. *Heckler v. Lopez*,

---

**5.** The Social Security Act itself does not shed light on whether the Secretary, if she considers medical factors at the cessation hearing, must find that those medical factors have changed as a basis for her decision that the disability has ceased. In fact, it was not until recently that Congress has addressed the medical improvement issue. In debates over the 1982 Amendments to the Act, a number of Senators called for a medical improvement standard. *See* 128 Cong.Rec. 13857–13866 (Dec. 3, 1982) (comments of Senators Heinz, Pryor, Reigal, Dole, Cohen, Metzenbaum). No decision on appropriate legislation was reached by the 1982 Congress, but bills on the issue have been introduced and are pending before the 1983 Congress. *See* H.R. 3755.

—— U.S. at ——, 104 S.Ct. at 11. Justice Rehnquist indicated that such an order, similar to mandamus, "significantly interferes with the distribution between administrative and judicial enforcement of the Social Security Act...." *Id.* at ——, 104 S.Ct. at 12. Therefore, he granted the stay pending determination of the Secretary's appeal to the Ninth Circuit.

The plaintiffs here have requested almost the same type of relief which the *Lopez* plaintiffs had requested. Justice Rehnquist stated, and this court· agrees, that such relief may not be consistent with 42 U.S.C. 405(i) which directs payment of disability benefits only "[u]pon final decision of the Secretary or upon final judgment of any court of competent jurisdiction...." This court cannot decide, at this time, the merits of each individual class member's claims for reinstatement.

Thus, the plaintiffs' request for restoration of benefits and repayment of illegally withheld money must be denied.

Accordingly, it is this 13th day of December, 1983, by the United States District Court for the District of Maryland, ORDERED:

1. That the motion to certify the class is GRANTED to include all persons:

"(a) Who have applied for disability benefits under the Social Security Act;

"(b) Who have been found by the Secretary to be under a disability as defined in the Social Security Act, 42 U.S.C. § 416(i) and determined to be eligible for monthly disability benefits under the Act;

"(c) Who after being notified that the Secretary was reviewing their continued disability and/or proposed to terminate their benefits either

1) filed form SSA–454aF4 asserting that they were still disabled, or

2) filed a request for reconsideration following the formal decision to terminate their benefits.

"(d) Whose disability has been determined by the Secretary to have ceased in a decision issued on or after the 60th day prior to the filing of this action;

"(e) Whose disability has been determined to have ceased based on medical factors;

"(f) Who have had or will have their monthly benefit checks stopped; and

"(g) Who have had their disability benefits terminated without any finding that either (i) there has been a change in their medical condition since the time that the Secretary first determined that they were under a disability as defined in the Act or (ii) that the original favorable decision was erroneous."

2. That the Secretary be, and is hereby, ENJOINED from terminating the social security disability benefits of all class members absent a finding of medical improvement when the evidence at the cessation hearing relates solely to the claimant's physical or mental condition.

3. That the cases of plaintiffs Washington, Dill, Boyd, and Messenger are REMANDED to the Secretary for reconsideration in light of this decision.

4. That the class members' claim for immediate restoration of benefits is DENIED.

5. That the Clerk shall mail a copy of this Memorandum and Order to counsel for the parties.