Martha **ROBINSON**, Plaintiff,

v.

Otis R. **BOWEN**, M.D., Secretary of Health and Human Services, Defendant.

Civ. A. No. 84–1226–T.

United States District Court, D. Kansas.

Feb. 18, 1988.

David H.M. Gray of Gragert, Hiebert & Gray, Wichita, Kan., for plaintiff.

Benjamin L. Burgess, Jr., U.S. Atty. by Stephen K. Lester, Asst. U.S. Atty., Wichita, Kan., Harry B. Mallin, Asst. Regional Counsel, Dept. of Health & Human Services, for defendant.

## OPINION AND ORDER

THEIS, Senior District Judge.

This matter comes before the court on the motion of plaintiff Martha Robinson for attorney fees pursuant to the Equal Access to Justice Act (hereinafter "EAJA"), 28 U.S.C. § 2412, for assistance provided by counsel in an action to resume her eligibility for Social Security benefits. The Secretary responded to the motion; Robinson did not file a reply brief. After considering the briefs and the relevant case law, the court is prepared to rule.

## PROCEDURAL HISTORY

An extended recitation of the history of this case and the Social Security disability benefits program during the 1980's is essential to resolve this case. The Secretary determined Robinson's schizophrenia disabled her in May 1972. Ten years later in October 1982, the Secretary concluded Robinson no longer suffered a continuing disability and terminated her benefits. Robinson pursued the appropriate administrative remedies without success.

In April 1984, Robinson filed an appeal pursuant to 42 U.S.C. § 405(g) in this court. The Secretary submitted a motion and memorandum urging the court to affirm the administrative decision. On October 2, 1984, Robinson filed a cross-motion for summary judgment or remand. A week later, Congress enacted the Social Security Disability Benefits Reform Act of 1984 (hereinafter the "Reform Act"), Pub.L. No. 98–460, 98 Stat. 1794 (October 9, 1984). Section 2(d)(2)(C) of the Reform Act mandated that the Secretary redetermine the termination of benefits on all actions "to which a request for judicial review was pending on September 19, 1984." The Reform Act instructed the Secretary to use the "medical improvement" standard of section 2(a) of the Act, 42 U.S.C. § 1395(f), when reevaluating eligibility terminations. This court granted the Secretary's motion to remand in November 1984. Dkt. no. 14.

After nearly a year and a half without action by the Secretary on Robinson's case, the court sustained her motion to require the Secretary to provide a definite date of redetermination by April 30, 1986. The Secretary's response stated he would likely make a decision by May 31, 1986. Robinson received notice of the resumption of her benefits on March 8, 1987.

The path to the Reform Act and Robinson's lengthy redetermination of benefits begins in the last decade. During the 1970's, the cost of the Social Security program rose rapidly for several reasons. First, an increasing number of persons received benefits for the first time. Second, few persons that already received benefits lost them. The percentage of persons *with benefits* that the Secretary terminated benefit eligibility after reevaluation of their condition drastically declined during the 1970's. H.R.Rep. No. 98–618, 99th Cong., 1st Sess. 10, *reprinted in* 1984 U.S.Code Cong. & Admin. News 3038, 3047 (hereinafter H.R. Rep. No. 98–618).

In an effort to contain the rising number of beneficiaries and the corresponding increase in the cost of the program, Congress passed measures in 1980, effective January 1, 1982, to increase the number and frequency of disability reevaluations. With more reevaluations, Congress thought the Secretary could more quickly discover the recipients that were no longer disabled. In March 1981, before the 1980 amendments took effect, the Department of Health and Human Services increased the pace and total number of reevaluations far beyond the timetable set out in the 1980 amendments. During the reevaluations, the burden of proof was on the disability beneficiary to demonstrate his or her continuing disability. *Id.* The difficult standard of review and more rigorous " 'adjudicative climate' " resulted in the termination of benefits for nearly half of those reevaluated. *Id.* at 3047–48.

Appeals by the persons with benefits recently terminated flowed into the federal courts. The courts of appeals quickly and emphatically rejected the Secretary's "continuing disability" reevaluation standard.

When Congress enacted the Reform Act with the "medical improvement" disability standard, eleven courts of appeals, including the Tenth Circuit, had adopted the medical improvement standard. *Velazquez v. Heckler,* 610 F.Supp. 328, 330 (S.D.N.Y. 1984) (collecting cases). After passage of the Reform Act, the Secretary needed to reexamine the termination of benefits in more than 400,000 cases. Dkt. no. 17 at 2.

## DISCUSSION

A disability claimant may receive attorney fees under the EAJA if: 1. the claimant is a "prevailing party;" and 2. the "position" of the United States was *not* "substantially justified"; or 3. some special circumstance would "make an award unjust." 28 U.S.C. § 2412(d)(1)(a).

## A. PREVAILING PARTY

The Secretary correctly points out that the Tenth Circuit recognizes two tests in deciding whether a litigant is a "prevailing party." Under the first test, applicable when the court renders a decision on the merits, a litigant is considered a prevailing party when he or she "achieve[s] 'some of the benefit the party sought in bringing the suit.' " *Wyoming Wildlife Federation v. United States,* 792 F.2d 981, 983 (10th Cir. 1986) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–9 (1st Cir.1978)). The second test, applicable when the case settles without a court decision as it did here, is called the catalyst test. The Tenth Circuit formulation of the catalyst test states: "First, plaintiff's lawsuit must be causally linked to the securing of the relief obtained. Second, the defendant's conduct in response to the lawsuit must be required by law." *Operation Engineers Local Union No. 3 v. Bohn,* 737 F.2d 860, 863 (10th Cir.1984).

The Secretary disputes the first criterion of the catalyst test. He alleges no causal link exists between Robinson's suit and her favorable redetermination of benefits. The Secretary buttresses his contention with a statutory argument and a recent decision from another district court in this circuit. Neither contention is persuasive.

In *Cruz v. Bowen,* 668 F.Supp. 669 (D.Utah 1987), the court found no causal link between Cruz's suit challenging his *initial* denial of benefits and the Secretary's favorable redetermination of that denial. The court concluded the Secretary's favorable action resulted from: 1. the new regulations promulgated pursuant to § 5 of the Reform Act and 2. the review required by § 5 of the Reform Act of all *initial* determinations made under the pre-Reform Act regulations. *Id.* at 673–4.

Both factors crucial to the *Cruz* court's holding of no causal link are distinguishable from the instant case. First, unlike the automatic redetermination in *Cruz,* the Secretary would only redetermine Robinson's case *if* she had an appeal pending in federal court. *Compare* § 5(c)(1) with § 2(d)(2)(C) of the Reform Act. Second, the Secretary conducted Cruz's redetermination with totally new standards. The standard used in Robinson's redetermination was the same one that this court, this circuit and nine other circuits applied before the Reform Act and would have applied but for the remands required by the Reform Act. Dkt. no. 14 at 1; *Velazquez,* 610 F.Supp. at 330. *Cruz* is not dispositive on this question.

The Secretary's other allegation against finding causation is that section 2(d)(2) of the Reform Act mandated a remand of Robinson's case. While not cited by the Secretary, the court is aware of two cases supporting the Secretary's position. *McCarroll v. Bowen,* 661 F.Supp. 1163, 1164 (D.N.J.1987); *Mathus v. Heckler,* 661 F.Supp. 241, 242–3 (N.D.Ill.1987). Both courts deny prevailing party status to the plaintiff because of their interpretation of the type of remand issued. These two courts distinguish between a remand by a court after a review on the merits and the mandatory review dictated by section 2 of the Reform Act. Apparently based on the remand argument, the two courts summarily reject the catalyst argument without *any* analysis. *McCarroll,* 661 F.Supp. at 1164; *Mathus,* 661 F.Supp. at 242–3.

This court disregards these unexplained decisions. The *McCarroll* and *Mathus*

courts fail to mention or analyze the legal and public policy history leading to the Reform Act. Second, the courts talismanic use of the term "remand" is unwarranted. *Whiting v. Bowen,* 671 F.Supp. 1219, 1222–4 (W.D.Wis.1987) (exhaustive refutation of the remand argument). Third, the court would have reviewed Robinson's case in October 1984 under the medical improvement standard. As explained below, the court would have found the Secretary's view not supported by substantial evidence and awarded benefits and attorney fees to Robinson. The Secretary is now attempting to avoid attorney fees liability because the Reform Act directed immediate review of this case, *if* it was on appeal in federal court. The fortuitous enactment of the Reform Act, designed to force the Secretary to comply with the rulings of eleven courts of appeals, cannot now act as a shield to prevent this court from awarding attorney fees to the very persons harmed by the Secretary's policy of nonacquiescence. *Sherman v. Bowen,* 647 F.Supp. 700, 703 (D.Me.1986).

■ The court concludes Robinson is a prevailing party under the catalyst test for the following reasons. First, Robinson's suit and the thousands of others like it directly contributed to the overwhelming body of law in the courts of appeals approving of the medical improvement standard and to Congress passing the Reform Act. Congress adopted the medical improvement standard to "*conform* with the standard practices of Federal law, through *acquiescence* in Federal Court of Appeals rulings." H.R.Rep. No. 98–618, 1984 U.S. Code Cong. & Admin.News at 3039 (emphasis added).

Several other courts also conclude that the multitude of challenges by litigants to the Secretary's "continuing disability" standard are a direct link to passage of the Reform Act and the litigant's ultimate resumption of benefits. *Vitale v. Secretary of Health and Human Services,* 673 F.Supp. 1171, 1176 (N.D.N.Y.1987); *Whiting v. Bowen,* 671 F.Supp. 1219, 1224 (W.D. Wis.1987) ("Plaintiffs' suit and others like them contributed to Congress's perception

of a problem in the disability benefits program and to the passage of the Reform Act."); *Stone v. Heckler,* 658 F.Supp. 670, 673 (S.D.Ill.1987) ("The failure to follow judicial precedent [the Secretary's policy of 'nonacquiescence' in the law of a circuit] and the resulting avalanche of litigation prompted Congress to take action by enacting the Reform Act of 1984...."). *Contra Mathus v. Heckler,* 661 F.Supp. 241, 243 (N.D.Ill.1987).

Second, Robinson could not benefit from the Reform Act if she did not appeal her case to federal court. This court remanded Robinson's case because she filed her appeal within the time proscribed by § 2(d)(2)(C) of the Reform Act. Her filing of the 42 U.S.C. § 405(g) appeal was a prerequisite to the remand and demonstrates the causal link between her suit and the favorable redetermination of benefits. *Hall v. Bowen,* 672 F.Supp. 667, 670 (E.D. N.Y.1987).

Third, the policy of the EAJA supports the court in finding that Robinson was the prevailing party. Congress perceived that an absence of money to pay counsel prevented many individuals from challenging government conduct. By allowing attorney fees to parties who prevailed over the government, Congress attempted to limit the disparity in power between individuals and the government. H.R.Rep. No. 96–1418, 96th Cong., 2d Sess. 6, *reprinted in* 1980 U.S.Code Cong. & Admin.News 4984 (hereinafter H.R.Rep. No. 96–1418). By exercising their enhanced power and challenging a government position, citizens would help refine and formulate public policy and insure the "legitimacy and fairness of the law." *Id.* at 9–10, 1980 U.S.Code Cong. & Admin.News at 4988–89. In short, "fee-shifting becomes an instrument for curbing ... the unreasonable exercise of Government authority." *Id.* at 12, 1980 U.S.Code Cong. & Admin.News at 4991. The House affirmed the original purposes of the EAJA when it passed amendments to the EAJA in 1985. H.R.Rep. No. 99–120, 99th Cong., 1st Sess. 4, *reprinted in* 1985 U.S.Code Cong. & Admin.News 132, 133.

The court is convinced that Robinson is a party the drafters of the EAJA envisioned a court would consider a "prevailing party." When faced with the termination of benefits under a standard rejected by the relevant circuit court of appeals, Robinson challenged the Secretary's decision. As noted above, her action and that of many others led to Congress' intervention. Her suit played a part in formulating public policy and ensuring fair regulations governed disability benefit termination proceedings. H.R.Rep. No. 96–1418 at 9–10, 1980 U.S.Code Cong. & Admin.News at 4988–89. Other courts concur in this assessment. *Vitale,* 673 F.Supp. at 1177 ("finding that plaintiff Vitale is a prevailing party under the EAJA is entirely consistent with the purpose of the EAJA, which is to encourage individuals to challenge unreasonable government conduct"); *Whiting,* 671 F.Supp. at 1225; *Stone,* 658 F.Supp. 675 (the legislative purpose of the EAJA is "that the expense of correcting error on the part of the Government should not rest wholly on the party whose willingness to litigate has helped define the limits of federal authority,....").

Two other courts, without significant analysis, found a causal link sufficient to satisfy the catalyst test in cases with procedural histories identical to the instant case. *Hall,* 672 F.Supp. at 670; *Sherman,* 647 F.Supp. at 703. The court draws additional support from these decisions.

In sum, the court resolves the prevailing party question in Robinson's favor. The court finds Robinson's suit was a catalyst to passage of the Reform Act and a prerequisite to a remand pursuant to the Act and that designating Robinson a prevailing party is completely in accord with the policy of the EAJA.

## B. SUBSTANTIALLY JUSTIFIED

■ The substantially justified question of an EAJA attorney fee request involves two interrelated parts. The court must evaluate what "position" the Government took in the litigation and whether it had "substantial justification" for that position. The position of the Government includes its

civil litigation posture and the action or inaction taken by the agency that led to the civil action. 28 U.S.C. § 2412(d)(2)(D). Substantial justification for the Government's position is a question of reasonableness in law and fact. *Kemp v. Bowen*, 822 F.2d 966, 967 (10th Cir.1987).

■ The Secretary's position at all times during this case was that he would terminate benefits if the recipient could not show a continuing disability. The appropriate standard in this circuit was the more lenient medical improvement test. The Tenth Circuit announced this test in *1981* in *Van Natter v. Secretary of Health, Education and Welfare*, No. 79–1439, slip op. at 6–7. The Secretary suggested *Van Natter* did not squarely hold in favor of the medical improvement standard in *Trujillo v. Heckler*, 569 F.Supp. 631, 635 (D.Col. 1983). The district court "unequivocally" rejected this attack. *Id.*

In August 1984, just eight days after the Secretary filed its final brief in this case, the Tenth Circuit reaffirmed that *Van Natter* stated the medical improvement test and was the law of the circuit. The court explained, "(t)his formulation (the medical improvement standard), although phrased somewhat differently, has been approved by at least five other circuits, *including this one.*" *Byron v. Heckler*, 742 F.2d 1232, 1236 (10th Cir.1984) (citing *Van Natter*) (emphasis added). This court also recognized the Secretary's policy of nonacquiescence in the law of the circuit in its order remanding the case. Dkt. no. 14 at 1.

■ The Secretary had no reasonable legal basis for using the continuing disability standard. The Secretary's misconception of the law is sufficient evidence of the absence of substantial justification for the Government's position. *DeWilde v. Bowen*, No. 85–1911–K, slip op. at 2 (D.Kan. April 30, 1987) [Available on WESTLAW, 1987 WL 45085.]

The Secretary's position also lacked a reasonable factual basis. The evidence used to support the Secretary's decision to terminate benefits is dubious at best. The Secretary relied on the medical opinion of Dr. William Klontz and psychiatric social worker Carol Schrag to cut off benefits and contest her appeals. Klontz's opinion is seriously compromised by his own admission that he saw Robinson for only 75 minutes in five sessions spread out over more than a year. Tr. 165. Robinson corroborated Klontz's calculation of the time they spent together. She testified she saw him for more than five minutes on only several occasions. Tr. 29, 30, 36.

The Secretary cites Schrag's letter of September 20, 1982, which detailed Robinson's progress during the previous two years, to support the decision to terminate benefits. Tr. 166–7. Schrag's September 20 evaluation is completely undercut by her report on the following day: "The patient was seen on September 20, 1982 in a state of paranoia, anger and depression that was similar to intake report in April, 1980 (the date when Robinson began treatment)." Tr. 168. She provided no other report. Subsequent extensive evaluations in 1983 by Dr. George, Robinson's treating physician in the 1970's, and Dr. Leisy found Robinson's mental illness continued to render her disabled. Tr. 177–79. The Secretary lacked substantial justification for terminating Robinson's eligibility for benefits.

### C. SOME SPECIAL CIRCUMSTANCE

The final statutory criterion under the EAJA is whether some special circumstance exists that would make an award of attorney fees unjust. 28 U.S.C. § 2412(d)(1)(A). The Secretary proffered no special circumstance and the court is unable to discern one. Therefore, the court finds Robinson is entitled to attorney fees pursuant to the EAJA.

### D. ATTORNEY FEES

■ Robinson requests attorney fees at the rate of one hundred dollars ($100.00) per hour for 30.55 hours of federal court representation on the merits of the suit and 2.65 hours in preparing the EAJA petition. Robinson supports her request for fees above the statutory rate of seventy-five dollars per hour by noting the contingent nature of the fee, the lengthy nature of the

case, the successful result, the nearly thirty percent increase in the cost of living since the enactment of the EAJA, and the quality of representation provided by counsel.

This court previously recognized that the contingent fee arrangement was a permissible factor to consider in determining an EAJA fee request. *Jones v. Bowen*, 682 F.Supp. 1176, 1177 (D.Kan.1986). The court adheres to this view. Throughout this opinion, the court has discussed the lengthy delays in this case and the ultimate success of Robinson—both factors point to an enhancement of the statutory rate. The court is familiar with Robinson's counsel's professional and extensive representation of Social Security claimants. The court readily finds the fee request of one hundred dollars per hour reasonable. *See Jones*, 682 F.Supp. at 1177; *DeWilde*, slip op. at 3–5.

The court scrutinized Robinson's time records and finds the time expended on this case a reasonable amount. Pursuant to a prior award of attorney fees under 42 U.S.C. § 406(b)(1) to Robinson, the court makes the following award of fees.

IT IS BY THE COURT THEREFORE ORDERED that plaintiff's motion for attorney fees in the amount of one hundred dollars per hour for 33.2 hours is hereby granted. The Secretary is ordered to pay $3,320.00 to plaintiff's counsel within sixty days of this Order. IT IS BY THE COURT FURTHER ORDERED that plaintiff's counsel refund $2,100.72 to plaintiff and retain the balance of the fee award.