**Michael J. HUTCHINSON, Plaintiff,**

**v.**

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**No. 82-C-593.**

United States District Court, E.D. Wisconsin.

June 26, 1985.

Thomas E. Bush, Milwaukee, Wis., for plaintiff.

Melvin K. Washington, Asst. U.S. Atty., Milwaukee, Wis., for defendant.

**MEMORANDUM AND ORDER**

WARREN, District Judge.

By its *Order* of July 16, 1984, the Court remanded this matter to the Secretary for further consideration of her decision that the plaintiff is no longer entitled to receive disability insurance benefits. The Court's decision was based principally on its finding of no substantial evidence of the plaintiff's ability to perform a wide range of sedentary work and its concomitant conclusion that the Administrative Law Judge had erred in applying a Medical-Vocational Guideline Rule. On remand, the Administrative Law Judge determined that the plaintiff is, indeed, entitled to continuing disability insurance benefits under the So-

cial Security Act—a finding adopted by the Appeals Council on December 10, 1984, thus constituting the Secretary's final decision in this matter.

By its *Order* of April 30, 1985, the Court directed the Clerk of Court to enter final judgment that the plaintiff continues to be entitled to a period of disability and to the disability insurance benefits for which he had applied. The principal justification for the Court's directive was its "[strong feeling] that such a practice is entirely appropriate if the plaintiff, as in this case, seeks to recover attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A)." Court's *Order* at 2 (April 30, 1985).

Presently before the Court in this matter are the plaintiff's companion motions for authorization of attorney's fees pursuant to 42 U.S.C. § 406(b) and for an award of attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412. In support of his request for authorization under 42 U.S.C. § 406(b), counsel acknowledges the legitimate interest of the federal trial courts in scrutinizing authorization requests such as this but argues that the sum of $14,635.20 which he seeks in fees is wholly justified under the circumstances of the present case, as follows:

> ... I believe that it is a reasonable fee since this case was taken on a contingent fee basis, since more than one hundred hours of attorney time went into Mr. Hutchison's federal court representation, since this fee is commensurate with some fees received for Social Security disability representation before the agency, and since Mr. Hutchison feels very strongly that his attorneys should be compensated in this amount....
>
> Here, I don't think that there can be any question but that my briefs and other submissions to the Court directly resulted in the remand decision. In my initial brief I focused on the fact that the evidence as summarized by the ALJ did not support a conclusion that Michael Hutchison was capable of a "full range of sedentary work." Within a few months after my brief was submitted, the Social Security Administration itself issued Social Security Rulings 83–10 and 83–12 which were precisely on point. I immediately provided copies of these to the Court. These rulings formed the basis of the Magistrate's recommendation to [the Court] in this case.

*Letter Brief* of Thomas E. Bush at 1 & 2 (May 8, 1985).

In addition, counsel notes that the present request for approval of full attorney's fees in the amount of 25% of past due benefits is undertaken with the approval and encouragement of his client; in this context, counsel has provided the Court, under his affidavit of May 7, 1985, with a letter from the plaintiff, describing the tortuous procedural history of this case and offering his full support for authorization of the requested amount. In the body of his affidavit itself, plaintiff's attorney describes the nature and scope of his expertise in Social Security disability representation, itemizes those services provided in representing his client in this action, and explains the nature of the attorney-client relationship pursuant to which this action has been prosecuted. Finally, counsel has provided the Court with an accounting of those fees and services rendered by the attorney who initiated but did not complete the prosecution of the plaintiff's claims.

Section 206(b)(1) of the Social Security Act, 42 U.S.C. § 406(b)(1), provides as follows:

> Whenever a court renders a judgment favorable to a claimant under this title who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past due benefits to which the claimant is entitled by reason of such judgment, and the Secretary may, notwithstanding the provisions of section 205(i) [42 USC § 405(i)], certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past due benefits. In case of any such

judgment, no other fee may be payable or certified for payment for such representation except as provided in this paragraph.

The Court has carefully reviewed the fee petition submitted by plaintiff's counsel in support of authorization under § 406(b) and concludes that all services rendered are both reasonable and justifiable in terms of the expenditures of time and resources necessary to the successful prosecution of this case.

Admittedly, the requested fee of $14,635.20 is substantial and might, under other circumstances, be viewed as downright exorbitant. Nonetheless, as fully demonstrated by the materials submitted in support of the authorization request, the procedural and substantive history of this lawsuit has been both long and colorful. The Court feels strongly that present counsel—and, to the extent appropriate, the attorney responsible for initiating this action—should be fully compensated for the considerable, unrelenting efforts they undertook to ensure a successful prosecution of this matter. The wholehearted support given the present request by the plaintiff himself only serves to underscore the Court's conclusion in this regard. Accordingly, the Court will direct the Clerk of Court to amend the judgment of April 30, 1985, in this matter, to permit plaintiff's counsel to recover a reasonable fee for his services in this matter, not in excess of 25% of the total past due benefits to which the claimant is entitled—that is, $14,635.20—pursuant to 42 U.S.C. § 406(b).

In support of his companion petition for an award of fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, the plaintiff notes that he is, indeed, the prevailing party pursuant to the judgment entered by the Clerk of Court on April 30, 1985, and that, at the time this action was initiated, his net worth was less than one million dollars. Most importantly, however, the plaintiff contends that the position adopted and argued by the Secretary in this litigation was not "substantially justified" as that phrase is used in 28 U.S.C. § 2412(d)(1)(A). The plaintiff's argument in this context is articulated as follows:

> ... At issue in this case was a defective administrative law judge's decision which did not follow the Secretary's own regulations in arriving at the conclusion that Michael Hutchison's disability had ceased. The ALJ found that Michael Hutchison was capable of "a full range of sedentary work." With this finding the ALJ then applied the Medical-Vocational Guidelines and found Mr. Hutchison not disabled.
>
> All of the medical evidence, however, even the summary of that evidence in the ALJ's decision, indicated that Michael Hutchison did not have the capacity for prolonged sitting contemplated by the Social Security Administration's definition of sedentary work. See 20 CFR § 404.1567(a). (See also the definition of light work in 20 CFR § 404.1567(b) which states that one found capable of light work also should be capable of doing sedentary work unless there is an "inability to sit for long periods of time.")
>
> Despite this rather clear definition of "sedentary work", the Secretary's Memorandum in Support of Defendant's Motion for Summary Affirmance of September 30, 1982, stated on page 7 that sedentary work "involves alternative sitting and standing positions...." It is difficult for me to see how the Secretary's misstatement of her own definition of "sedentary work" in this proceeding can be substantially justified....

*Letter Brief* of Thomas E. Bush at 4 (May 7, 1985).

The plaintiff further characterizes as obfuscatory two subsequent memoranda of law filed by the Secretary in support of summary affirmance of her position; in fact, plaintiff's attorney finds it "difficult to imagine a private attorney familiar with the Social Security disability decision-making process and regulations advising fighting this case on any basis other than 'maybe the other side won't notice the problem with the ALJ's decision.'" *Letter Brief* of Thomas E. Bush at 5 (May 7,

1985). In the end, it is the movant's position that the government's defense of the Secretary's decision on that basis was wholly inappropriate and, as such, lacks any substantial justification.

Significantly, although she has been afforded fourteen days from the date of receipt of the plaintiff's motion in which to file an answering brief, as prescribed by Local Rule 6.01, the Secretary has failed to interpose any responsive memorandum. Accordingly, the Court today resolves this pending matter based solely on the extensive record compiled to date and the numerous materials submitted by plaintiff's counsel in support of his client's fee request.

The Equal Access to Justice Act provides, in pertinent part, as follows:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).[1] At the time the statute was enacted, it was clearly experimental in nature—an attempt to extend application of existing common law and statutory exceptions to the American Rule on attorney's fees to the Government and, in addition, to require the award of fees in those circumstances described in § 2412(d)(1)(A). *Alspach v. District Director of Internal Revenue,* 527 F.Supp. 225, 227 (D.Md.1981). The Court of Appeals for the Seventh Circuit has described the several purposes of the Act this way:

> The EAJA was enacted largely to encourage individuals and small businesses to litigate against the government adverse determinations in administrative proceedings and civil actions, regardless of the cost of such litigation. In view of the traditional American Rule regarding attorneys' fees, however, Congress concluded that, if it were to facilitate a prevailing private party's obtaining reimbursement for his or her legal expenses, then individuals and small businesses would be less likely to be deterred from challenging government action due to the high cost of civil litigation....
>
> The EAJA also has a parallel objective of deterring the government from pursuing litigation—either in initiating it or defending against it—when the government's position is not substantially justified. According to House Report 1418, the prevailing bill—S. 265—"rests on the premise that a party who chooses to litigate an issue against the Government is not only representing his or her own vested interest but is also refining and formulating public policy." H.R.Rep. No. 1418, 96th Cong., 2nd Sess. 9, 10,

1. Incorporated in the extensive 1980 amendments to the Equal Access to Justice Act was a so-called "sunset" provision, repealing subsection (d) of the statute effective October 1, 1984, "except that the provisions of that subsection shall continue to apply through final disposition of any action commenced before the date of repeal." On October 11, 1984, the Congress attempted to rescue the Equal Access to Justice Act from oblivion in a form which would have substantially broadened the scope of the Government's potential liability. Among other things, H.R. 5479, in the version with which the Senate finally concurred, would have established clearly the standard for determining whether the Government's position is "substantially justified": The "position" to be considered would include the prior administrative action that led to the adversary adjudication—not merely the Government's litigation posture.

On November 8, 1984, however, the President effected a pocket veto of the legislation by issuing a memorandum of disapproval of certain statutory changes incorporated in H.R. 5479. At the same time, the President expressed his commitment to the policies underlying the Equal Access to Justice Act and announced that he would support its prompt reauthorization by the new Congress, retroactively effective to October 1, 1984.

While 28 U.S.C. § 2412(d) is thus presently unavailable as to actions initiated on or after October 1, 1984, it is clear that the "sunset" provision does not preclude an award of attorneys' fees in this case, commenced on May 14, 1982.

*reprinted in* 1980 U.S.Code Cong. & Admin.News 4984. Litigation against the government, for example, can correct an erroneous agency rule or "provide a vehicle for developing or announcing more precise rules." H.R.Rep. No. 1418, *supra,* at 10.

House Report 1418 also indicates that Congress intended the EAJA to apply to appeals to the federal courts under the Social Security Act, although attorneys' fees are not available in administrative proceedings under that Act. H.R.Rep. No. 1418, *supra,* at 12 [additional citations omitted]....

The EAJA accordingly was enacted to establish a *general* statutory exception for awarding attorneys' fees to parties who prevail against the government. This was intended to be accomplished by "permit[ting] a court in its discretion to award attorneys' fees and other expenses to prevailing parties in civil litigation involving the United States to the same extent it may award fees in cases involving other parties." H.R.Rep. No. 1418 *supra,* at 9.

*Berman v. Schweiker,* 713 F.2d 1290, 1295–1296 (7th Cir.1983).

Because the statute thus represents a limited waiver of sovereign immunity, its several limitations and conditions must be strictly observed and exceptions are not to be implied. *Rhode Island Committee on Energy v. General Services Administration,* 561 F.2d 397, 405 (1st Cir. 1977) (quoting *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957)). Accordingly, despite the Government's silence in the wake of the plaintiff's present request, the Court is obliged to determine on its own initiative whether the movant qualifies for an award of attorney's fees under the Equal Access to Justice Act.

As a threshold matter, the Court must find that the movant is "a prevailing party"—a phrase broadly construed and not limited to a victor only after the entry of final judgment following a full trial on the merits. *United States for Heydt v. Citizens State Bank,* 668 F.2d 444, 447 (8th Cir.1982). In the wake of the Secretary's decision of December 10, 1984, that the claimant continues to be entitled to disability insurance benefits under the Social Security Act, it is clear the plaintiff in this action is the "prevailing party." *See McGill v. Secretary of Health & Human Services,* 712 F.2d 28, 30 (2d Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1420, 79 L.Ed.2d 745 (1984) ("claimant prevails where it is determined that claimant is entitled to benefits"); *cf., Andino v. Heckler,* 609 F.Supp. 293, 295 (E.D.Wis.1985) (Reynolds, C.J.) ("[A] claimant who is awarded and receives benefits after remand from the district court is entitled to the entry of final judgment as the prevailing party"). The plaintiff's prevailing status was further confirmed by this Court's *Order* of April 30, 1985.

As an additional threshold requirement, the Court must find that the movant is "an individual whose net worth did not exceed $1,000,000 at the time the civil action was filed"—a prerequisite to recovery embodied in subsection (d)(1)(B) & (2)(B) of the statute. To meet this prerequisite, the plaintiff has provided the Court with an affidavit, pursuant to the filing requirements of subsection (d)(1)(B), establishing his net worth of less than $1,000,000 at the time he filed his complaint.

The critical issue to be considered by the Court is, as the plaintiff recognizes in his motion papers, whether "the position of the United States was substantially justified or ... special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The test for determining substantial justification is essentially one of reasonableness; if the Government can demonstrate a reasonable basis for litigating the dispute, both in law and in fact, no award of attorneys' fees can be made. *Ellis v. United States,* 711 F.2d 1571, 1575–76 (Fed.Cir. 1983).

In the application of this test, the Government bears the burden of proving substantial justification for its position.

*Dougherty v. Lehman*, 711 F.2d 555, 561 (3rd Cir.1983). While there is no presumption that the Government's position is not substantially justified simply because it lost the case, it must nonetheless make a "strong showing" regarding the viability of its position if it is to overcome a motion for an award of fees. *Watkins v. Harris*, 566 F.Supp. 493, 498 (E.D.Pa.1983).

■ Under the circumstances of the present case—and absent any showing at all regarding the viability of the Government's position—the Court must conclude that there was no substantial justification for the defense of the Secretary's decision. As the parties to this action acknowledged in their briefs in support of their petitions for summary judgment, the central issue presented by this challenge to the Secretary's finding of nondisability was whether the plaintiff did, in fact, regain the residual functional capacity for a full range of sedentary work. Based on that pivotal finding, the first administrative law judge to hear this case applied a Medical-Vocational Guideline Rule to determine that the plaintiff was no longer entitled to the disability insurance benefits he had been receiving.

Nonetheless, there was uncontested medical evidence in the record to indicate that the claimant was unable to engage in sustained sitting, standing, or walking on a prolonged basis absent some change in physical activity—evidence upon which the claimant principally relied in arguing for summary reversal. As the plaintiff accurately noted in his Rule 56 motion and again in his supplemental submission to the Court, the Secretary's finding of nondisability in this matter was discredited significantly by her own regulations defining both sedentary work and the process for evaluating claims of individuals who must alternatively sit and stand. *See* 20 C.F.R. § 404.1567(a) & (b); Social Security Ruling 83-10 & 83-12. The considerable factual and legal difficulty with the position adopted by the Secretary and pursued throughout this litigation was explicitly recognized by Magistrate Robert L. Bittner in his *Recommendation* of April 24, 1984, concluding that the Secretary had failed to meet her burden of proof that the plaintiff had regained the residual functional capacity to engage in a full range of sedentary work.

The unequivocal nature of the evidence in this matter was most recently underscored by the decision of the Administrative Law Judge on remand, finding that the claimant is, indeed, entitled to a continuing period of disability and to disability insurance benefits. Among other things, the Administrative Law Judge concluded, as follows, that the claimant does suffer from an impairment that severely restricts his ability to engage in work-related functions:

> ... In particular, Exhibits 20 and 32, which include reports of examinations by the Curative Workshop and Dr. David Shapiro, dated July 10, 1980 and August 27, 1981, respectively, demonstrate the limitations in the claimant's residual functional capacity as a result of the residuals from his lumbar laminectomy, such that the claimant would not be able to perform any work which would involve excessive lifting, stooping, or bending, or work which would not allow a change in position after a short period. Specifically, the Curative Workshop assessment noted that the claimant would be able to stand, sit, or walk, but only for short periods of time in any one position. Also, the assessment noted the claimant's variation in periods of tolerance of given activities, as well as his variable range of motion. Dr. Shapiro's assessment was essentially a confirmation, in that it indicated that the claimant's abilities to stand, walk, bend, squat, kneel, sit, or walk up or down stairs would not be particularly limited, if they were performed "on an intermittent basis." ...
>
> Based on the forgoing, the undersigned concludes and finds that the claimant suffers from a severe impairment, but that it does not meet the requirements of any impairment listed in Appendix 1 to Subpart P of Regulations No. 4, nor does it approach the level of severity contemplated by Appendix 1.

However, the claimant suffers recurrent extended periods of intense pain of disabling severity, such that he would be incapable of performing even sedentary work on a regular, sustained basis. Such a residual functional capacity would preclude the performance not only of the claimant's past relevant work, but also of any other jobs, of either a skilled, semiskilled, or unskilled nature, which exist in significant numbers in the regional or national economy.

*Decision* of Administrative Law Judge at 5–6 (September 10, 1984). In short, the record as a whole provides strong support for the conclusion that this plaintiff remains unable to perform sedentary work and, accordingly, that the Secretary's attempt to justify her decision in the post-administrative stage of this case was, indeed, substantially unjustified.

Although the arguments articulated by the Government in support of their motion for summary affirmance were not wholly without merit, the Court concurs in the view advanced by the plaintiff that the Secretary's attempt to explain and justify her decision denying benefits cannot be squared with her own regulations defining sedentary work and the process for evaluating an individual unable to sit, stand, or walk without intermittent changes in position or activity. Nothing in the unpublished decision of the United States Court of Appeals for the Seventh Circuit in *Marlow v. Schweiker*, 714 F.2d 148 (7th Cir. 1983), provides any gloss on those definitional prerequisites that might reasonably be understood to support the Secretary's finding of nondisability in this matter. As an aside, the Court notes its inclination to believe that the Secretary's decision not to respond to the present motion for an award of attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, represents some tacit acknowledgment that the position adopted by the Government at the administrative level and pursued through this litigation was, indeed, largely unsupported by the relevant legal standards and the medical evidence adduced in support of the plaintiff's claim of disability.

Because it concludes that the Secretary's position in this case was not sufficiently "solid" to justify the proffered defense, *see McDonald v. Schweiker*, 726 F.2d 311, 316 (7th Cir.1983) ("... [T]he government must have a solid though not necessarily correct basis in fact and law for the position that it took in this action"), the Court will grant the motion for an award of attorney's fees in the amount of $5,047.50, pursuant to the Equal Access to Justice Act, 24 U.S.C. § 2412.

## CONCLUSION

For the reasons articulated above, the Court hereby DIRECTS the Clerk of Court to amend the judgment of April 30, 1985, in this matter, to authorize the payment of attorney's fees in the total amount of $14,635.20, pursuant to 42 U.S.C. § 406(b). The Court further DIRECTS the Clerk of Court to amend the judgment of April 30, 1985, to grant attorney's fees in the amount of $5,047.50, pursuant to 24 U.S.C. § 2412.[2]

2. For purposes of clarity, the Court notes that the effect of today's order, granting attorney's fees under both 42 U.S.C. § 406(b) and 28 U.S.C. § 2412, is to require the payment of $14,635.20 to plaintiff's attorney, Thomas E. Bush, from the total amount of the past due benefits to which the plaintiff is entitled. Pursuant to the terms of the Equal Access to Justice Act, the sum of $5,047.50 will be paid directly to the plaintiff, effectively reimbursing him for some portion of the fees authorized for payment to his attorney under 42 U.S.C. § 406(b).