**Mona R. WHITING, Plaintiff,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant.**

**Thomas J. POLUS, Plaintiff,**

v.

**Otis R. BOWEN, Secretary, Department of Health and Human Services, Defendant.**

**Nos. 84–C–773–C, 84–C–236–C.**

United States District Court, W.D. Wisconsin.

Oct. 9, 1987.

Mary Diezel, Western Wisconsin Legal Svcs., Dodgeville, Wis., for Whiting.

Craig A. Fobes, West St. Paul, Minn., for Polus.

David Sarnacki, Asst. U.S. Atty., Madison, Wis., for Bowen in No. 84–C–773–C.

Debra Schneider, Asst. U.S. Atty., Madison, Wis., for Bowen in No. 84–C–236–C.

---

## ORDER

CRABB, Chief Judge.

This opinion consolidates two cases, both raising the issue whether attorneys' fees may be awarded under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), to Social Security claimants who obtain disability benefits upon a remand to the Social Security Administration, rather than upon a court judgment. For the reasons that follow, I conclude that both plaintiffs are entitled to attorneys' fees under the Act.

Both of these cases were appeals to the district court from adverse decisions by the Secretary of the Department of Health and Human Services. Both plaintiffs claimed disability based on mental impairments. While plaintiffs' appeals were pending before this court, Congress passed the Social Security Disability Benefits Reform Act of 1984, which, among other things, required defendant to establish revised criteria for the determination of mental impairment disability. On his own motion, the United States Magistrate remanded the cases to defendant for reconsideration in light of those revised criteria. Upon reconsideration, the Secretary determined in each case that plaintiffs qualified as disabled individuals and awarded them benefits retroactive to their initial applications. Judgment in favor of Polus was entered January 6, 1987 affirming the revised decision of defendant. Judgment in favor of Whiting was entered on February 17, 1987.

Now before the court are the motions for an award of attorney's fees pursuant to the Equal Access to Justice Act, which provides for awards of fees against the United States and its agencies to "prevailing parties," unless the position of the United States was "substantially justified." In orders entered June 2, 1987, I determined that plaintiffs were prevailing parties for purposes of the Act, and I directed the parties to brief the issue of "substantial justification." In *Whiting*, defendant has chosen not to brief the issue of substantial justification, but has requested instead that I reverse my decision that plaintiffs are "prevailing parties" within the terms of the Act.

In *Whiting*, defendant argues against an award of attorney's fees on the grounds that (1) plaintiff is not a prevailing party because she did not prevail in this court, and (2) since this court never made a determination of plaintiff's claim on the merits, the court has no basis on which to make a determination that defendant's position was substantially justified. In *Polus*, defendant raises essentially the same objections. However, he also argues that he was substantially justified in denying Polus benefits based on the evidence available to the administrative law judges who considered Polus' first and third applications.

## OPINION

The pertinent language of the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), reads as follows:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

One threshold matter requires discussion. In *Henricks v. Bowen*, No. 83–C–851–C (W.D.Wis. Dec. 22, 1986) [Available on WESTLAW, DCT database], I denied a

request for attorney's fees brought by a disability benefits claimant whose case had been remanded pursuant to another provision of the Social Security Disability Benefits Reform Act (addressing the treatment of medical improvement determinations), and who had had his benefits reinstated as a result of the remand. I said in that order that I did not believe that a claimant who obtained benefits as a result of a remand could be a "prevailing party" under the Equal Access to Justice Act. After reviewing plaintiffs' arguments in these cases, I am persuaded that I was wrong in that position.

### 1. Prevailing Party

Defendant contends that plaintiffs are not prevailing parties because they obtained benefits only because of an intervening change in the applicable law and not because of their having initiated litigation. Defendant's position is that merely obtaining what one sought by suing is not enough to make a plaintiff a prevailing party under the Equal Access to Justice Act. Something more is required: the result must be causally linked to the litigation, rather than, for example, the inevitable consequence of an intervening event. The leading case in support of this position is *Nadeau v. Helgemoe*, 581 F.2d 275 (1st Cir.1978), in which the court developed the "catalyst" test to determine prevailing parties under 42 U.S.C. § 1988, an attorneys' fee statute similar to the Equal Access to Justice Act. The "catalyst" test requires a showing that (1) the lawsuit was causally linked to the securing of the relief obtained, and (2) the defendants' response to the litigation must be one required by law rather than merely gratuitous.

To the extent that defendant is contending that plaintiffs should not be reimbursed for wholly unnecessary litigation, their position is compelling. To the extent they are asserting that simply because benefits are obtained after remand to an administrative agency rather than by a decision on the merits by a court, their position is far less compelling.

According to defendant's argument, the remand of plaintiffs' cases pursuant to the Reform Act precluded plaintiffs from qualifying as "prevailing parties," since the court did not have the opportunity to decide plaintiffs' cases on the merits. This argument assumes that in the typical appeal from a denial of benefits, courts *do* decide "on the merits." In so assuming, defendant ignores the special features inherent in the review of administrative actions.

■ Remands of disability benefits cases are common. Courts remand such cases to the Secretary for reconsideration where they find that the Secretary's decision is not supported by substantial evidence, *see, e.g., Taylor v. Schweiker*, 739 F.2d 1240 (7th Cir.1984) (reversing district court's affirmance of Secretary's denial of benefits with directions to remand to Secretary, where administrative law judge failed to consider all the evidence), or where the Secretary has incorrectly applied the law as interpreted by the relevant circuit, *see, e.g., Cannon v. Harris*, 651 F.2d 513 (7th Cir. 1981) (reversing district court's affirmance of Secretary's denial of benefits, where administrative law judge erred in applying Secretary's regulations). If the Secretary reverses his negative decision upon remand and awards the claimant benefits, the claimant may seek attorney's fees without the court's ever having decided his case "on the merits," at least in the traditional sense. A "traditional judgment" is on the merits "if it completely disposes of the underlying cause of action, or determines that the plaintiff has no cause of action." *Harper Plastics, Inc. v. Amoco Chemicals Corp.*, 657 F.2d 939, 943 (7th Cir.1981) (citations omitted). By this standard, remands for lack of substantial evidence or misapplication of the law are not decisions "on the merits." The underlying cause of action in a disability benefits case is the claimant's application for judicial review of the secretary's decision that the claimant is not disabled, or no longer disabled. A court's decision to remand does not reach this ultimate issue. Yet courts have uniformly found claimants to be "prevailing parties" where remands resulted in an award of benefits. *See, e.g., Miller v. United*

*States,* 753 F.2d 270, 273–74 (3d Cir.1985) (since claimant had been granted benefits by agency on remand, there was "no question" that Miller is a prevailing party); *Cook v. Heckler,* 751 F.2d 241 (8th Cir. 1984) (it is the receipt of benefits that renders a typical social security claimant a prevailing party); *McGill v. Secretary of Health & Human Services,* 712 F.2d 28, 32 (2d Cir.1983) (party obtaining remand "will not become a prevailing party unless and until she is awarded benefits, at which time her application for appropriate attorney's fees may again be considered"); *Hutchinson v. Heckler,* 612 F.Supp. 264, 269 (E.D. Wis.1985) (Secretary's decision on remand that claimant continued to be disabled made claimant a prevailing party); *Andino v. Heckler,* 609 F.Supp. 293, 295 (E.D.Wis. 1985) ("a claimant who is awarded and receives benefits after remand from the district court is entitled to the entry of final judgment as the prevailing party").

■ Furthermore, it does not follow from the fact that a court does not decide the case on the merits when it makes a remand to the Secretary that the parties' arguments have *never* been considered on the merits. In disability benefits appeals, decisions on the merits are made at the administrative level, after hearings before an administrative law judge. These administrative hearings are considered analogous to judicial proceedings. By law, the decisions reached at Social Security Administration hearings have the effect of final judgments. 42 U.S.C. § 405(h). *See also Delamater v. Schweiker,* 721 F.2d 50, 53 (2d Cir.1983); Restatement (Second) of Judgments § 83 (1982); K. Davis, 4 Administrative Law Treatise § 21:3 (2d ed. 1983).

■ The Supreme Court considered an argument similar to defendant's in *Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980). The plaintiff in *Maher* brought an action under 42 U.S.C. § 1983, alleging that the defendant's Aid to Families with Dependent Children regulations violated her rights under the Fourteenth Amendment. The parties agreed to a settlement and a consent decree giving plaintiff "substantially all of the relief originally sought in her complaint," *Gagne v. Maher,* 455 F.Supp. 1344, 1347 (D.Conn.1978), before the court reached a determination whether the plaintiff's rights had been violated. (The settlement was reached on plaintiff's pendent state claims.) The plaintiff then petitioned for an award of attorney's fees under 42 U.S.C. § 1988. The defendant argued that plaintiff was not a "prevailing party" because she had obtained relief as a result of a settlement. The Supreme Court rejected this argument, noting that "nothing in the language of § 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated." 448 U.S. at 129, 100 S.Ct. at 2575. Although the Equal Access to Justice Act differs from § 1988 in certain important respects, neither statute contains any language that suggests that the status of "prevailing party" is conditioned on full litigation of the merits.

Defendant has submitted copies of unpublished opinions in several cases in which courts have denied attorney's fees under the Equal Access to Justice Act in circumstances similar to those involved here.[1] In

---

1. The circumstances in *Henricks* were "similar," rather than identical, because although Henricks' case, like Polus's and Whiting's, was remanded pursuant to the Reform Act, it was not *required* to be remanded by the terms of the Act. *See* Social Security Disability Benefits Reform Act of 1984, Sec. 2(d)(3) (mandating remands in cases where former recipients of benefits challenged the Secretary's determination that they were no longer disabled); *see also Soper v. Heckler,* 754 F.2d 222, 225 (7th Cir.1985) (reading the direction for remand in such cases as mandatory). Here, Polus and Whiting challenged defendant's denial of their initial applica-

tions for disability benefits. The Reform Act did not mandate remands in these circumstances, and thus the magistrate's decision to remand was discretionary in each case. Indeed, Polus objected to the remand, asserting that the Reform Act would not affect the merits of his claim. I do not find this distinction critical for the purpose of responding to defendant's "merits" argument. Nevertheless, Polus is correct in pointing out that defendant is not entirely accurate when he says that in reconsidering these cases, he was merely "complying" with the law (i.e., the Reform Act). Defendant was acting in accordance with the magistrate's order. Thus,

*Mathus v. Heckler,* 661 F.Supp. 241 (N.D. Ill.1987), which contains a thorough discussion of the Reform Act's effect on motions for the award of fees, the court found that a remand pursuant to the Reform Act was not a "substantive remand." *Id.* at 242. *See also Bogacz v. Bowen,* No. 84 C 2284 (N.D.Ill. May 20, 1987) [Available on WESTLAW, DCT database] (following *Mathus*); *Krause v. Heckler,* No. 84 C 3322 (N.D.Ill. January 9, 1987). In defining "substantive" remands in *Mathus,* the court focused on the causal connection between a remand and the ultimate outcome of the claimant's appeal and concluded that "substantive" remands are "based on the court's review of the merits," and thus are "more closely analogous to outright reversals." *Mathus v. Heckler,* at 242. In that case, the remand of plaintiff's case was mandated by the Reform Act, which the court found dispositive: "plaintiff's favorable decision was ultimately obtained solely as a result of the Secretary's application of new standards...." *Id.* at 242.[2]

As much as I respect the courts that decided *Mathus, Bogacz,* and *Krause,* I am not persuaded by the logic of their opinions. The distinction between "substantive" and "non-substantive" remands does not seem warranted under *Maher* or by the Congressional purpose behind the Equal Access to Justice Act. In *Maher,* the Court focused on the fact that the plaintiff had obtained the relief she sought; the Court did not find it necessary to make any inquiry whether there was a causal nexus between her suit and her ultimate success. Nor did the Court mention the "catalyst" test developed two years earlier in *Nadeau v. Helgemoe,* 581 F.2d 275 (1st Cir.1978), to determine whether parties that obtain relief without obtaining a judgment on the merits may still be "prevailing parties" under § 1988.

The Court's failure to refer to *Nadeau* in its opinion in *Maher* suggests a disinclination to adopt even the mildly restrictive view of prevailing party articulated by the Court of Appeals for the First Circuit. (In its last term, it referred to the term "catalyst," but not to the opinion in *Nadeau,* without stating that it would adopt it as a test. *Hewitt v. Helms,* —— U.S. ——, 107 S.Ct. 2672, 2677, 96 L.Ed.2d 654 (1987).) Nevertheless, courts have continued to use this test in § 1988 cases and, more recently, in Equal Access to Justice Act cases involving remands pursuant to the Reform Act. *See, e.g., Mathus v. Heckler* at 242; *Sherman v. Bowen,* 647 F.Supp. 700, 703 (D.Me.1986) (claimant would have prevailed on the merits of suit, had suit not been remanded pursuant to the "fortuitous enactment of the [Reform Act] ...;" (court found close causal connection between plaintiff's suit and Secretary's reversal of position); *Smith v. Bowen,* 663 F.Supp. 59 (S.D.Ind., 1987) (approving analysis of *Sherman v. Bowen* but ultimately declining to reach "prevailing party" issue, since government found to have been "substantially justified").

Even if I were to apply the "catalyst" test, it would be an unduly restrictive view of the circumstances of this litigation to say that plaintiffs' suits had no causal relationship to plaintiffs' eventual success. Plaintiffs' suits and others like them contributed to Congress's perception of a problem in the disability benefits program and to the passage of the Reform Act.

By bringing these claims to federal court, claimants like plaintiff have not only redressed their own situations, but helped prompt Congress to pass the Social Security Disability Benefits Act of 1984 which expressly mandates application of the standard which courts previously merely inferred.

---

the causal link between the Reform Act and the remands is not as strong as defendant argues.

**2.** *But see Kemp v. Heckler,* 777 F.2d 414 (8th Cir.1985). In *Kemp,* the plaintiff's case was remanded pursuant to the Reform Act. He then applied for attorney's fees. The court affirmed the district court's denial of fees, finding the plaintiff's application premature. However, the

court did not suggest that it considered the remand pursuant to the Reform Act a potential obstacle to a later application for fees: "This decision is without prejudice to any right of Kemp to submit a claim for attorneys' fees for this appeal if he is successful at the administrative level...." *Id.* at 415.

*Sizemore v. Heckler,* 608 F.Supp. 911, 917 (D.C.Ill.1985) *See also Bohn v. Heckler,* 613 F.Supp. 232, 238 (N.D.Ill., E.D.1985):

> The explosion of disability litigation in recent years, the high rate at which the federal courts have overturned the Secretary's determinations, and the institutional struggle between the federal courts and the Secretary over the issue of "noncompliance" reflect the useful disciplinary function of legal challenges to the Secretary's decisions and procedures by often impoverished, ill and politically unorganized disability claimants.

Moreover, it is a leap of logic to conclude that because claimants' cases were remanded pursuant to the Reform Act, they could not have been successful *but for* the Reform Act. Defendant's causation arguments ignore the legislative history of the Reform Act as well as the fact that in many of the cases remanded under the Reform Act, including the instant ones, plaintiffs have been awarded benefits *retroactive* to their initial applications. The legislative history of the Act suggests that it was enacted to "redress" claims that would have been legitimate even under pre-Reform Act law. *See Sizemore v. Heckler,* 608 F.Supp. at 917. The main purpose of the Reform Act was to "clarify statutory guidelines for the determination process to insure that no beneficiary loses eligibility for benefits as a result of careless or arbitrary decision-making by the Federal government." H.R.Rep. No. 98–618, 98th Cong., 2d Sess. 2, *reprinted in* 1984 U.S. Code Cong. & Admin.News 3038, 3039. Congress was concerned that public confidence in the disability benefits program had eroded in the face of "constantly shifting and possibly arbitrary policies." *Id.* at 3040. The Reform Act's essential function was clarification of the law, rather than the making of substantive changes in the law of disability determination.

■ The framers of the Equal Access to Justice Act "wanted to make it easier, not harder, for people of limited means to collect their small claims from the government." *McDonald v. Schweiker,* 726 F.2d 311, 315 (7th Cir.1983). Some of these "people of limited means" are disability benefits claimants. By narrowly interpreting "prevailing parties," defendant would create a greater obstacle to obtaining fees than formerly existed for the very people whose claims the Equal Access to Justice Act and the Reform Act were designed to facilitate and to vindicate. Neither the legislative history of these acts nor the procedural character of administrative appeals justifies creating such an obstacle. In 1985 amendments to the EAJA, Congress affirmed its original intention in regard to the interpretation of "prevailing parties": "The Act, as originally enacted, has an expansive view of the term 'prevailing parties.'" H.R.Rep. No. 99–120, Part I, 99th Cong., 1st Sess. 19, *reprinted in* 1985 U.S. Code Cong. & Admin.News 132, 147. Therefore, I reaffirm my earlier conclusion in these two cases that plaintiffs are "prevailing parties" for purposes of the Equal Access to Justice Act.

### 2. Substantial Justification

The Equal Access to Justice Act has a second hurdle: even parties adjudged to be "prevailing parties" are not entitled to attorney's fees under the Act if the government's position was substantially justified.

Defendant argues that because the court never decided plaintiffs' cases on the merits, it has no basis on which to determine the issue of substantial justification. Defendant contends that the court cannot reach the merits now because to do so would "ignore subsequent events and reality and ... go back in time to decide a hypothetical case stripped of the change in law and the new evidence considered on remand which caused the Secretary to award benefits...." Defendant's Memorandum in Opposition to Plaintiff's Motion for Attorney's Fees under the Equal Access to Justice Act at 8, *Whiting v. Bowen,* No. 84–C–773–C.

■ Defendant's argument ignores the fact that even in pre-Reform Act cases in which benefits were awarded on remand, the courts were compelled to go back to the record as it existed *prior to remand* to decide the issue of "substantial justifica-

tion." In determining substantial justification, the court is to consider both the legal position of the government and the actions which gave rise to the civil action. 28. U.S.C. § 2412(d)(2)(D); *K & I Transfer & Storage, Inc. v. NLRB*, 805 F.2d 749, 752 (7th Cir.1986); *Gotches v. Heckler (II)*, 782 F.2d 765, 767 (7th Cir.1986). The outcome of the case does not resolve the question. The fact that the Secretary reverses an original decision denying benefits may bear on the issue of substantial justification, but it is not a condition for finding either that the Secretary was or was not substantially justified in his original position. A court's reversal of the Secretary's decision, or the Secretary's reversal of his own decision, does not automatically imply that the Secretary was not substantially justified for purposes of the EAJA. *Hutchinson v. Heckler*, 612 F.Supp. 264, 270 (E.D.Wis. 1985) (fact that Secretary lost case does not create presumption that he was not substantially justified, but Secretary must make strong showing regarding viability of his position); *McDonald v. Schweiker*, 726 F.2d 311, 316 (7th Cir.1983) (in order to show substantial justification, Secretary must have "solid *but not necessarily correct* basis in fact and in law") (emphasis added).

The reasons that persuade the Secretary ultimately to award benefits—whether they involve new evidence or a change in the law, or both—are not relevant in determining the substantial justification of the government's actions leading to the appeal, and the government's litigation position during the appeal. As Congress made clear in its 1985 amendments to the Equal Access to Justice Act, it is often necessary to go "back in time" to decide the issue of substantial justification:

> When the case is conceded on the merits, dropped by the agency, or otherwise settled on terms favorable to the private party before any of the merits are heard, the court (or adjudicative officer) will again look to the record in the case to determine whether the position of the government was substantially justified. The record in this instance will consist of the pleadings, affidavits and other supporting documents filed by the parties....

H.R.Rep. No. 99–120, Part I, 99th Cong., 1st Sess. 13, *reprinted in* 1985 U.S.Code Cong. & Admin.News 141–42. Although this language does not specifically mention the Reform Act, it expressly includes within the scope of the Equal Access to Justice Act cases which have not been decided "on the merits."

The government has the burden of proving that its opposition to plaintiff was substantially justified. *Berman v. Schweiker*, 713 F.2d 1290, 1295 (7th Cir.1983). How that burden is met is a matter of dispute. Some courts have held that the government's position is substantially justified if it is supported merely by *"some* evidence." *See, e.g., Albrecht v. Heckler*, 765 F.2d 914 (9th Cir.1985); *Butler v. Heckler*, 639 F.Supp. 14 (E.D.N.C.1985); *Whiteman v. Bowen*, 640 F.Supp. 992 (S.D. Ohio 1986). *But see Anderson v. Heckler*, 756 F.2d 1011, 1013 (4th Cir.1985) ("We think that the test is whether arguably there was *substantial* evidence to support the Secretary's position"); *Wheat v. Heckler*, 763 F.2d 1025, 1031 (8th Cir.1985) (reversing district court's denial of attorney's fees where no *substantial* evidence to support Secretary's denial of benefits). In other words, courts have tended to define substantial justification with reference to the substantial evidence standard for judicial review of administrative decisions. Some courts have equated substantial justification with substantial evidence, while others have found substantial justification in the government's opposition where there was only "some evidence" to support the agency decision.

■ In the Seventh Circuit, the basic test for determining substantial justification is one of reasonableness. *Gotches v. Heckler (I)*, 773 F.2d 108, 110 (7th Cir. 1985); *Temp Tech Industries, Inc. v. NLRB*, 756 F.2d 586, 590 n. 4. In order to show substantial justification, the government must have "a solid though not necessarily correct basis in fact and law" for its position. *McDonald v. Schweiker*, 726 F.2d at 316 (7th Cir.1983); *see also Phil*

*Smidt & Son, Inc. v. NLRB*, 810 F.2d 638, 642 (7th Cir.1987); *Bittner v. Sadoff & Rudoy Industries*, 728 F.2d 820, 830 (7th Cir.1984). The government must demonstrate: " '(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the theory alleged.' " *Phil Smidt & Son, Inc.* at 642 (quoting *Donovan v. DialAmerica Marketing, Inc.*, 757 F.2d 1376, 1389 (3d Cir.1985), *cert. denied*, 106 S.Ct. 246 (1985)). As its opinion in *Phil Smidt* makes clear, the Court of Appeals for the Seventh Circuit continues to adhere to the reasonableness test despite a statement in the House Report on the 1985 amendments to the Equal Access to Justice Act that "mere reasonableness" is not enough to constitute substantial justification. *Id.* at 642 n. 5. *But cf.* H.R.Rep. No. 99–120, Part I, 99th Cong., 1st Sess. 9–10, *reprinted in* 1985 U.S.Code Cong. & Admin.News 138.

Despite the different characterizations given to the test, I am not convinced that the requirement of a "solid ... basis in fact and law" is essentially different from the substantial evidence standard. Logic suggests that if the record contains substantial evidence to support the agency decision, the government has a reasonable basis in fact and law for defending the decision. Indeed, in defining substantial justification, one section of the Equal Access to Justice Act uses the same language Congress has used to define substantial evidence: substantial justification "shall be determined on the basis of the administrative record, as a whole...." 5 U.S.C. § 504(a)(1) (dealing with award of fees to prevailing parties in adversary adjudications conducted by agencies). *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951) (discussing the significance of the phrase "on the record considered as a whole" for judicial review of findings by the NLRB). The limitations placed by the substantial evidence standard on the scope of judicial review of administrative action serve as a useful guide for determining whether the government's position was substantially justified within the meaning of the Equal Access to Justice Act.

I turn then to consideration of the defendant's position in each of the two cases.

### Whiting

Whiting applied for Child's Insurance Benefits and Supplemental Security Income in 1982 based on mental retardation, emotional problems, and drug and alcohol abuse. Her applications were denied, as were her requests for reconsideration. Whiting's case came before an administrative law judge in December of 1983.

In reaching his decision that Whiting was not disabled, the administrative law judge followed the five-step sequential evaluation required by the Social Security Act. *See* 20 C.F.R. § 404.1520(b)–(f); *Bowen v. Yuckert*, —— U.S. ——, 107 S.Ct. 2287, 2290–2291, 96 L.Ed.2d 119 (1987). According to this procedure, the administrative law judge must ask first whether the claimant is working and engaging in substantial gainful activity. If he is, then there can be no finding of disability. The second step requires the administrative law judge to make the threshold determination that the claimant has a severe impairment. If the claimant's impairment is not severe, he will not be considered disabled. If the impairment is severe, the administrative law judge proceeds to the third step, known as the "meets or equals" test. If the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, then he is considered disabled. If the claimant's impairment fails to meet or equal one or more of the listed impairments, the administrative law judge must proceed to the fourth step and ask whether the claimant is capable of performing work he has done in the past. If he is, the administrative law judge makes a finding of not disabled. If the claimant is not capable of performing past work, the administrative law judge must consider the claimant's "residual functional capacity" to perform some other kind of work which exists in the national economy. *See* 20 C.F.R. § 404.1566(a). This capacity

is viewed in light of the claimant's age, education, and past work experience.

The administrative law judge found that Whiting's retardation qualified as severe. However, he determined that her impairment did not meet or equal any of the mental impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00 (1983).[3] The impairment(s) most nearly equivalent to Whiting's impairment are listed in § 12.-05 C, which applies to claimants with an IQ of 60 to 69 inclusive and a "physical or other mental impairment imposing additional and significant work-related limitation of function." Numerous intelligence tests revealed Whiting's IQ to be in the range listed in 12.05 C, but the administrative law judge found no other significant physical or mental impairment. Therefore, he proceeded to step five of the evaluation procedure and determined that Whiting could perform "basic work related physical and mental activities despite her impairment." Tr. at 33.

The administrative law judge considered intelligence tests given to Whiting over the course of several years prior to the hearing. He also considered two consultative pyschological evaluations performed by Gary Ludvigson, a licensed psychologist, in December of 1981 and November of 1982. Tr. at 34. In summarizing Ludvigson's reports, the administrative law judge noted that Ludvigson had found Whiting "well oriented," "appropriate" in her behavior, and interested in sports and other hobbies. Tr. at 34. In his report of November, 1982, Ludvigson "came to the conclusion that the claimant is not suffering from any significant psychiatric disorder." Tr. at 34. The administrative law judge also mentioned clinical records revealing that Whiting had been hospitalized for six days in June of 1983 for marijuana and alcohol abuse. However, he found that there was insufficient evidence to show that Whiting's drug and alcohol problems imposed significant limitations on her. Tr. at 34. The administrative law judge concluded by stating that:

The objective clinical evidence reveals that the claimant is borderline mentally retarded, has a learning disability, and at times act [sic] somewhat immaturely. However, in terms of the claimant's ability to do work related activities, the claimant's impairments would only affect her ability to understand, carry out, and remember complex or detailed work instructions. The evidence does not establish that she could not deal with a [sic] simple work instructions. Similarly, the evidence does not establish that the claimant would be incapable of responding and dealing appropriately to [sic] supervision, co-workers, usual work situations, and with changes in the routine work setting.

Tr. at 35.

In his decision, the administrative law judge did not mention several other psychological evaluations of Whiting. For example, Whiting had undergone testing at the University of Wisconsin Learning Disability Clinic in October of 1981. Under the category "Psychiatry," the Learning Disabilities Clinic Staffing Summary stated: "Family history, underlying emotional difficulties and conversions impair her performance. Problems are severe and require individual psychotherapy." Tr. at 149. The report also stated that Whiting had "a generalized brain dysfunction. The condition is static and long-term." Tr. at 149. A report from the University Clinics' Neuropsychology Laboratory found that although there was no evidence to "suggest impairment restricted to the left hemisphere or any kind of progressive pathology ..., there are empirical indications of at least equal if not greater impairment of the right cerebral hemisphere...." Tr. at 156. In a psychological evaluation performed in June 1983, by Linda Bloom, a clinical psychologist, no evidence was found of an "ongoing psychotic process," but according to Bloom, Whiting was "quite immature" and had "difficulty dealing with frustration. Her tendency is to become angry and noncompliant. She will require a support-

---

**3.** In considering the administrative law judge's decision of December 9, 1983, I have used the 1983 edition of the Code of Federal Regulations, i.e. the pre-Reform Act regulations regarding disability determination.

ive but carefully structured setting in order to function at her optimal level." Tr. at 194. Lenore DeLoughery, Whiting's clinical social worker at the Tri-County Human Services Center, noted that Whiting could tolerate therapy only one-half hour a week; that she "physically loses control when feeling frustrated and has been aggressive towards objects at home and at Tri-County;" and that her "depressive episodes" had at times caused her "to feel suicidal" and to withdraw from people and activities. Tr. at 199.

In making a disability determination, an administrative law judge must "weigh all the evidence and may not ignore evidence that suggests an opposite conclusion." *Whitney v. Schweiker,* 695 F.2d 784, 788 (7th Cir.1982). His decision will be based on substantial evidence only if it is supported by the record as a whole. *Id.* at 786. *See also Switzer v. Heckler,* 742 F.2d 382, 385–86 (7th Cir.1984) (Secretary's attempt to use only those portions of the record favorable to her position, while ignoring other parts, was improper); *Smith v. Schweiker,* 671 F.2d 789, 793 (3d Cir. 1982) (administrative law judge may not ignore conflicting evidence and must also explain why he has rejected such evidence); *Beavers v. Secretary of Health,* 577 F.2d 383, 387 (6th Cir.1978).

■ Although the administrative law judge alluded to Bloom's report by saying that Whiting at times acted "somewhat immaturely," Tr. at 35, he relied almost exclusively on the intelligence tests, testimony of Whiting's mother, and the consultative examination by Dr. Ludvigson to arrive at his determination that Whiting was not disabled. However, there is significant clinical evidence in the record that Whiting suffered from emotional problems more severe than occasional immature behavior. In considering petitions for attorney's fees under the Equal Access to Justice Act, it may be inappropriate for the court to question an administrative law judge's weighing of conflicting medical evidence. *See Albrecht v. Heckler,* 765 F.2d 914, 916 (9th Cir.1985). However, an administrative law judge is still required to weigh all the evi-

dence before him. In this case, the administrative law judge failed to mention evidence which tended to conflict with Dr. Ludvigson's evaluations. Nor did he provide reasons why he did not take this evidence into account. I find that the government's position in denying Whiting's application for disability benefits was not substantially justified. I find also that the government was not substantially justified in defending a decision which was not based on all the evidence in the record. Therefore, Whiting is entitled to attorney's fees under the Equal Access to Justice Act.

Whiting has requested fees and costs amounting to $304.99 and $536.67, respectively. The total amount of fees requested is $841.66. Whiting's attorneys calculated the cost of their time at $70.00 per hour. The Equal Access to Justice Act provides for the award of attorney's fees at a rate not to exceed $75.00 per hour. 28 U.S.C. § 2412(d)(2)(A). The requests for attorney's fees in this case are reasonable and I will grant them.

### Polus

Plaintiff Polus applied for Disability Insurance Benefits and Supplemental Security Income in March 1978. His application was denied, and he appealed the decision. The administrative law judge who heard Polus's case in 1978 determined that he was not disabled. Polus applied again for disability benefits in 1979. This application was also denied, and Polus did not appeal it. In 1980 Polus applied once more for disability benefits and was unsuccessful. He appealed this third denial. In a decision dated June 28, 1982, the administrative law judge determined that Polus was not disabled. Polus then filed a suit in the district court. The case was remanded by the United States Magistrate. After a hearing before a new administrative law judge, Polus was determined to have been disabled since 1977. The administrative law judge recommended an award of benefits retroactive to the date of his initial application. The Appeals Council accepted this decision in August 1986.

In determining the question of substantial justification, I am considering only the June 28, 1982 denial, which is the decision appealed to the court. I am not considering whether defendant was justified in opposing Polus's two earlier applications for benefits. The administrative law judge seems to have taken into consideration Polus's two earlier applications for benefits, since he considered the record before the administrative law judge in the 1979 hearing, as well as medical reports written after that hearing and prior to Polus's third application. *See* Report and Recommendation of Magistrate Groh at 3–4, *Polus v. Heckler*, No. 84–C–236–C (March 26, 1985); Tr. at 1–2.

Polus based his claim for disability benefits on two alleged impairments: an arthritic condition which prevented him from continuing his former employment as carpenter, and psychological problems diagnosed variously as chronic depression and a schizoid personality disorder. The administrative law judge considered all the recent medical reports regarding these impairments, as well as earlier reports prepared in connection with Polus's first two applications. I cannot find that the administrative law judge failed to consider the whole record in reaching his decision.

However, the administrative law judge did not comply with defendant's own regulations in making his determination of not disabled. After reviewing the evidence of Polus's physical and mental impairments, the administrative law judge concluded that they did not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the stage three determination). The administrative law judge proceeded to apply Rule 202.14 of 20 C.F.R. Part 404, Subpart P, Appendix 2. The Rules contained in Appendix 2 are to be applied when the factors considered in determining a claimant's residual functional capacity, along with factors of education, age, and work experience, correspond exactly to the criteria of one of the Rules. *See* 20 C.F.R. § 404.1569 (1982). Rule 202.-14 directs a finding of not disabled for claimants approaching advanced age who have been determined to be capable of light

work, who have a high school education, and who have engaged in skilled or semi-skilled work. However, § 200.00(e) states:

> Since the rules are predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs, *they may not be fully applicable* where the nature of an individual's impairment does not result in such limitations, e.g., certain mental, sensory, or skin impairments. (Emphasis added)

Section 200.00(e)(2) states:

> However, where an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations. Also, in *these combinations of nonexertional and exertional limitations which cannot be wholly determined under the rules in this Appendix 2, full consideration must be given to all of the relevant facts* in the case in accordance with the definitions and discussions in the appropriate sections of the regulations.... (Emphasis added)

Thus, § 200.00 indicates that in those cases where severe nonexertional impairments exist, the Rules should not be applied except as an aid in evaluating all the relevant factors in the record. *"Where the evidence supports it,* an administrative law judge is permitted to conclude that a non-exertional limitation, while present, has no significant impact on a claimant's capacity to perform the range of work the individual is otherwise exertionally capable of performing, and that the Guidelines therefore apply." *Smith v. Schweiker*, 735 F.2d 267, 272 n. 3 (7th Cir.1984) (emphasis added). There-

fore, the question is whether the evidence supports the administrative law judge's determination that Polus's mental impairment was not severe enough to make the Rules in Appendix 2 inapplicable.

■ Reports from two psychiatrists, Drs. Davidson and Halgrimson, as well as hospitalization records, indicate that Polus was "a difficult treatment case what with schizoid elements to his personality and a chronic depression," Tr. at 242 (8/13/79 report of Dr. Davidson); that he had been "frightened to go out of the house" for a period of approximately one and a half years, Tr. at 245 (10/16/79 report of Dr. Davidson); that he suffered from a "chronic neurotic type of depression" with a personality structure "of a schizoid nature," Tr. at 281 (2/12/81 report of Dr. Halgrimson); and that his prognosis for the schizoid personality disorder was "poor," Tr. at 247 (10/16/79 report of Dr. Davidson). Between 1978 and 1982 various psychiatrists treated Polus with Mellaril, Tr. at 105 (6/23/78 report of Dr. Brousseau), and Haldol, Tr. at 248 (10/16/79 report of Dr. Davidson); Tr. at 258 (2/15/80 hospital report of Dr. Davidson). Both medications are used for the treatment of psychotic disorders. *See* PDR Physicians' Desk Reference at 1089, 1586 (1986). Moreover, Polus had been treated for psychological problems for many years prior to his application for disability benefits. Tr. at 247. Polus was admitted to Luther Hospital in Eau Claire on February 5, 1980 for "severe withdrawl" [sic]. Tr. at 257. The hospital report, written by Dr. Davidson, states that one of Polus's medications (Haldol) "was discontinued at the time of admission and within a week, Mr. Polus was noted to be exhibiting psychotic behavior, fearing that something was going to happen to him...." Tr. at 258. Clinical reports and Polus's own testimony showed him to suffer from a lack of interest in any kind of activity, Tr. at 25, 245, as well as a lack of social contacts outside his immediate family. Tr. at 245. Polus had a poor appetite, and at one point ate only one meal a day. Tr. at 245. In 1980 Polus began working in a sheltered workshop as a helper (this involved fetching tools for others). At the

hearing before the administrative law judge, Polus's representative Irving Yelle, a vocational rehabilitation counselor, testified that Polus was a very slow worker and tended to withdraw from his co-workers. According to Yelle, Polus's work speed was "under 50% of competitive work speed." Tr. at 34. In short, the evidence does not support the administrative law judge's conclusion that Polus had not been "significantly limited for any significant period of time secondary to his psychological/psychiatric condition." Tr. at 12. *See Taylor v. Schweiker*, 739 F.2d 1240, 1243 (7th Cir. 1984) (reversing and remanding to the Secretary, where court found inadequate support for administrative law judge's conclusion that plaintiff's depression did not significantly limit her ability to perform basic work-related functions). Here there is substantial evidence indicating that Polus's nonexertional impairment was severe enough to make the Rules in Appendix 2 inapplicable, especially when considered together with his age (51 at the time of the 1982 hearing), lack of transferrable skills, and an arthritic condition which prevented him from bending, squatting, or lifting objects heavier than 10–15 lbs., Tr. at 251. The administrative law judge stated that there was evidence that Polus's psychological problems had stabilized since he had begun working at the sheltered workshop. Tr. at 11. Nevertheless, Polus's medical history did not "coincide exactly" with any of the Rules in Appendix 2. Although the administrative law judge was careful to mention the evidence on the record in his decision, his application of Rule 202.14 effectively ignored the evidence which he cited. Because the administrative law judge failed to follow defendant's own regulations in evaluating Polus's impairments, I find that defendant was not substantially justified, either in the decision reached by means of the administrative law judge's improper evaluation, or in the defense of this decision. Therefore, Polus is entitled to the award of attorney's fees under the Equal Access to Justice Act.

Polus has requested a total of $3,243.75 in attorney's fees. This request is based

on the maximum rate allowed under the Equal Access to Justice Act. I find the amount reasonable and will therefore grant Polus's request.

### ORDER

IT IS ORDERED that plaintiff Whiting be awarded attorney's fees pursuant to 28 U.S.C. § 2412(d)(2) in the amount of $841.66.

IT IS FURTHER ORDERED that plaintiff Polus be awarded attorney's fees pursuant to 28 U.S.C. § 2412(d)(2) in the amount of $3,243.75.